**James HEARN, Plaintiff,**

**v.**

**B. J. RHAY, Superintendent of the Washington State Penitentiary, and Dr. William Hunter, Superintendent of the Washington State Penitentiary. Third Floor Mental Health Ward, Defendants.**

**No. 3971.**

United States District Court,
E. D. Washington.

Sept. 26, 1975.

Allen Ressler and Richard D. Emery, Prison Legal Services Project, Seattle, Wash., for plaintiff.

Slade Gorton, Atty. Gen., Earl R. McGimpsey, Asst. Atty. Gen., Olympia, Wash., for defendants.

### MEMORANDUM AND ORDER

NEILL, Chief Judge.

Plaintiff in this action is an inmate at the Washington State Penitentiary at Walla Walla. He was returned to the Walla Walla penitentiary in April of 1971 following his escape the previous year. A disciplinary hearing on the escape charge resulted in a sentence of twenty days isolation in the punitive segregation unit of the penitentiary. Two days after his release from segregation, he assaulted another inmate and, following another disciplinary hearing, he was sentenced to serve an additional twenty days in segregation.

In May of 1972, an initial adjustment committee hearing resulted in plaintiff's transfer to an administrative segregation unit. The alleged purpose of the transfer was for reasons of classification and security rather than discipline because plaintiff allegedly posed a danger to the general population and was himself in danger of reprisals from other prisoners.

On June 14, 1972, plaintiff was admitted to the mental health unit of the pris-

on without a hearing, but was returned to administrative segregation June 21. On July 13 he was admitted to the prison hospital because of his weakened condition following a hunger strike, and was returned briefly to administrative segregation July 31, then transferred again to the mental health unit where he remained until August 7, when he was sent back to administrative segregation. After approximately one day in segregation, plaintiff allegedly attempted suicide and was confined again to the mental health unit where he remained until March of 1974.

It is plaintiff's contention that his confinement in the mental health unit, accomplished in each instance without a hearing or other review, violated his right to due process of law and infringed his Eighth Amendment right to be protected from cruel and unusual punishment. He alleges in support of his claim that the mental health unit, or "third floor" as it is called within the institution, is a euphemism for a punitive isolation tier where prisoners with behavior problems are kept in filthy, double lock cells without adequate heat, hygienic materials, exercise, reading materials, and occasionally without clothing or bedding. Plaintiff further alleges that treatment is not available in the mental health unit. These allegations form the basis of plaintiff's civil rights suit for damages and injunctive and declaratory relief under 42 U.S.C. § 1983, and his pendent claim based on alleged violations of his right to treatment.

Defendants deny most of plaintiff's allegations and assert six affirmative defenses, including the defense that defendants acted in good faith and are therefore immune from suit for damages. Plaintiff contests defendants' assertions of good faith and immunity and seeks discovery of information to negate this defense.

■ Much of the information plaintiff seeks via depositions and motions for production of documents concerns legal advice provided defendants by the state attorney general. Defendants assert the attorney-client privilege with respect to all such information and plaintiff has moved for an order compelling production of documents and answers to deposition questions.[1] Plaintiff seeks discovery of all legal advice defendants received on the legality of plaintiff's confinement in the mental health unit on the ground that the attorney-client privilege is not available to protect such information in the context of this case, and that if the privilege did exist it has now been waived by defendants' assertion of the good faith defense.

■ It is necessary at the outset to consider recent decisions of the Supreme Court dealing with the qualified immunity that defendants have asserted as an affirmative defense. The genesis of the immunity in its present-day form can be found in *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), which held that legislators acting within the sphere of their legislative roles enjoy an absolute immunity from suit under the Civil Rights Act, 42 U.S.C. § 1983. In *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Court extended this absolute immunity to judicial officers and defined the general parameters of a qualified immunity for other state officials acting in their official capacities. This qualified immunity was later held to vary in relation to "the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based." *Scheuer v. Rhodes*, 416 U.S. 232, 247, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974). Since the purpose of such immunity is to encourage officials to assume the full

---

1. If the information plaintiff seeks is privileged, it would be protected from discovery by Federal Rule of Civil Procedure 26(b)(1).

responsibility of their offices without fear of liability, the scope of the protection tends to increase with the range of duties and responsibilities incumbent on the public official. *Scheuer, supra,* at 241–242, 94 S.Ct. 1683, *Pierson, supra,* 386 U.S. at 554, 87 S.Ct. 1213.

■ However, the scope of discretion and responsibilities merely defines the standard against which the action complained of is to be evaluated, and the ultimate inquiry is always whether the defendant state official acted in good faith, *i. e.,* whether he acted reasonably, in light of all the circumstances, and without malice.

■ In *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Supreme Court further clarified the good faith defense by holding that a constitutional violation is actionable if the state official who caused it

. . . knew or reasonably should have known that the action he took . . . would violate the constitutional rights of the [plaintiff] . . . or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . .

420 U.S. at 322, 95 S.Ct. at 1001. Therefore, the defense of good faith has both subjective and objective requirements, for it is not available if the defendant state official acted with either actual malice or with subjective good faith but "with such disregard of the [plaintiff's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith." *Ibid.* "Any lesser standard would deny much of the promise of § 1983". *Ibid.*

Defendants in this case assert in their answer that they "have acted in good faith" and "that the decisions made by them regarding plaintiff's custody were discretionary acts of public officials for which they are immune from suit for damages". In order to counter this defense, plaintiff seeks discovery of legal advice rendered defendants by the Washington Attorney General insofar as such advice related to plaintiff's confinement and tends to prove defendants' bad faith. It is in this context that defendants assert the attorney-client privilege and plaintiff moves the court for an order compelling discovery.

■ The issues thus raised require a close examination of the attorney-client privilege which, for purposes of this case, is set forth in Federal Rule of Evidence 501 (effective July 1, 1975): [2]

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law.

Fed.Rules Evid.Rule 501, 28 U.S.C. Hence, it is the common law of privilege as interpreted by the courts of the United States that governs in this case.

2. Although plaintiff has asserted a pendent tort claim under state law, and Rule 501 would require application of state privilege law with respect to it, the attorney-client privilege will be construed in the same manner for all claims asserted since both Washington law and Rule 501 adopt the common law of privilege. *Cf.* Rule 501 with R.C.W. 5.60.060(2) as construed in *Dike v. Dike,* 75 Wash.2d 1, 10, 448 P.2d 490 (1968) and *State v. Emmanuel,* 42 Wash.2d 799, 259 P. 2d 845 (1953) (holding that R.C.W. 5.60.-060(2) adopts the common law of privilege.)

■ Federal courts have uniformly held that the attorney-client privilege can arise with respect to attorneys representing a state, *United States v. Alu*, 246 F.2d 29 (2d Cir. 1957), Cleary, *McCormick on Evidence*, § 88 at 181 (2d Ed. 1972). Further, Rule 501 makes it clear that clients who may assert the privilege include a "government, State, or political subdivision thereof". *See also, Connecticut Mutual Life Insurance Co. v. Shields*, 18 F.R.D. 448–450 (S.D. N.Y.1955). Therefore, it is proper for this court to find that defendants are clients of the Washington State Attorney General and that the attorney-client privilege can be asserted with respect to confidential communications, insofar as the privilege would otherwise be applicable.

■ Although state courts are divided on the issue, federal courts have uniformly applied the privilege to communications from the attorney to the client as well as the reverse. *Garner v. Wolfinbarger*, 430 F.2d 1093, 1096 n. 7 (5th Cir. 1970); *Schwimmer v. United States*, 232 F.2d 855 (8th Cir. 1956); *8 in 1 Pet Products, Inc. v. Swift & Co.*, 218 F.Supp. 253 (S.D.N.Y.1963), 8 Wigmore, *Evidence*, § 2320 at 630–631 (McNaughten Rev.1961); Cleary, *McCormick on Evidence*, § 89 at pp. 182–183. However, the privilege is limited to communications expressly intended to be confidential, and some showing of an intention of secrecy must be made; the mere relation of attorney and client does not raise a presumption of confidentiality. 8 Wigmore, § 2311 at pp. 599–603, *McCormick*, § 91 at pp. 187–188. Hence, the presence of third persons who are not essential to the transmittal of information will belie the necessary element of confidentiality and vitiate the privilege. *Ibid.*

■ In the instant case, it is important to determine the precise nature of the "client" who, for purposes of this discovery motion, maintained the attorney-client relationship with the attorney general. If the client were the Department of Social and Health Services, which is responsible for supervision of the Washington State Penitentiary, then, as in the analogous situation of the corporate client, the attorney-client privilege would extend to the confidential communications of all persons who "speak for" or are part of the "control group" of the Department. *McCormick*, § 87 at p. 178; 8 Wigmore, § 2317 at pp. 618–619; Annot., 98 A.L.R.2d 241, 245–247 (1964).

On the other hand, if the attorney-client relationship encompassed defendants only in their individual capacities, the privilege would not apply to defendants' communications made in the presence of third persons, including Department of Social and Health Services personnel. The presence of such third persons would preclude a finding of confidentiality.

■ The court finds that the corporate analogy does not apply to this case for inherent in the theory of civil rights suits against the state is the basic premise that the state officials named as defendants are "stripped of [their] official or representative character" and "the State has no power to impart to [them] any immunity" for acts committed under color of state law in violation of plaintiff's constitutional rights. *Ex Parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908). Were this not the case, recovery would be barred by the Eleventh Amendment, which prohibits suits by private citizens against the states.

■ Therefore, due to the nature of the case, which proceeds on the theory that defendants acted in their individual capacities in allegedly violating plaintiff's constitutional rights, defendants are stripped of their immunity as state officers and will be treated as individuals for purposes of evaluating the

breadth of the attorney-client privilege.[3] As a result, all communications between the individual defendants and the attorney general, which were shared with third persons, whether communicated in the presence of such persons or lodged in files that were accessible to others, cannot be deemed confidential for purposes of the attorney-client privilege and are not protected from discovery. *Leathers v. United States*, 250 F.2d 159, 165–166 (9th Cir. 1957); *Himmelfarb v. United States*, 175 F.2d 924, 938–939 (9th Cir. 1949), *cert. denied* 388 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949); McCormick, § 95 at 189–191; 8 Wigmore § 2311 at 599–603; *see also, United States v. Simpson*, 154 U.S.App.D.C. 350, 475 F.2d 934, 936 (1973), *cert. denied* 414 U.S. 873, 94 S.Ct. 140, 38 L. Ed.2d 91 (1973); *United States v. Blackburn*, 446 F.2d 1089, 1091 (5th Cir. 1971), *cert. denied* 404 U.S. 1017, 92 S. Ct. 679, 30 L.Ed.2d 665 (1972); *Wilcoxon v. United States*, 231 F.2d 384, 385–386 (10th Cir. 1956), *cert. denied* 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469 (1956); *Cafritz v. Koslow*, 83 U.S.App. D.C. 212, 167 F.2d 749, 751 (1948). However, material compiled by counsel in preparation for this lawsuit would be protected from discovery by the "work product" doctrine, which exists independently of the attorney-client privilege. *See* Federal Rule of Civil Procedure 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Radiant Burners, Inc. v. American Gas Association*, 320 F.2d 314, 323 (7th Cir. 1963).

The question remains whether defendants should be compelled to answer questions and produce documents concerning

legal advice they received from the attorney general in confidence, *i. e.*, without the participation of third persons whose presence negated the confidentiality necessary for the privilege. This appears to be an issue of first impression, spawned by the evolution of the qualified immunity defense defined in *Wood v. Strickland, supra*. Based on the holding in that case, this court is compelled to recognize a new and narrowly limited exception to the attorney-client privilege, which applies to civil rights suits against state officials under 42 U.S.C. § 1983, wherein the defendant asserts the affirmative defense of good faith immunity.

Plaintiff argues that, by asserting the good faith immunity defense, defendants have ipso facto waived the attorney-client privilege to the extent the privilege would protect information relevant to that defense from disclosure. In support of this argument, plaintiff analogizes between this case and other cases where courts have found a waiver of privilege, as where a plaintiff waives the physician-patient privilege by filing a suit that places his physical condition in controversy. *See* Federal Rule of Civil Procedure 35; Annot. 36 A.L.R.2d 946 (1954); 8 Wigmore § 2389 at 855–861. An implied waiver of the attorney-client privilege has also been found where the attorney and client are themselves adverse parties in a lawsuit arising out of the relationship, McCormick, § 91 at 191, and at least one court has found such a waiver where a plaintiff in a patent infringement suit put the validity of the patent at issue. *Honeywell, Inc. v. Piper Aircraft Corp.*, 50 F.R.D. 117 (M.D.Pa.1970) (*but see Burlington*

---

3. The fact that the allegations of civil rights violations have not yet been proven does not preclude the court from finding, for discovery purposes, that defendants acted in their individual capacities. When a party asserts an established exception to the rules of privilege, a reasonable showing that the exception applies is sufficient to apply it for discovery purposes without the necessity of a

preliminary hearing. *Clark v. United States*, 289 U.S. 1, 15–16, 53 S.Ct. 465, 77 L.Ed. 993 (1933), McCormick § 95 at 200–201. Plaintiff's affidavits in support of the allegations of the complaint meet this burden. *But see*, discussion of what constitutes a "reasonable showing" in the context of this case, *infra* at 13–14, 53 S.Ct. 465.

*Industries v. Exxon Corp.*, 65 F.R.D. 26, 35 (D.Md.1974), for a contrary result).[4]

Plaintiff's most persuasive analogy involves cases holding that a habeas corpus petitioner impliedly waives the attorney-client privilege by contesting the constitutionality of his state court conviction. Courts have found an implied waiver in this context in order to allow inquiry of the petitioner's attorney concerning deliberate bypass of the right alleged to have been violated, the basis of the waiver being that privileged communications were the sole source of evidence on the issue of deliberate bypass. *Henderson v. Heinze*, 349 F.2d 67, 71 (9th Cir. 1965); *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967).

█ All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each exception may be summarized as follows: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

█ The instant case is distinguishable from those discussed above in that the parties asserting the attorney-client privilege are defendants in this civil rights action and, therefore, they have not engaged in the affirmative conduct of instigating this lawsuit. However, defendants assert the privilege in aid of the affirmative defense that they are protected from liability by a qualified immunity. Therefore, all the elements common to a finding of waiver are present in this case: defendants invoked the privilege in furtherance of an affirmative defense they asserted for their own benefit; through this affirmative act they placed the protected information at issue, for the legal advice they received is germane to the qualified immunity defense they raised; and one result of asserting the privilege has been to deprive plaintiff of information necessary to "defend" against defendants' affirmative defense, for the protected information is also germane to plaintiff's burden of proving malice or unreasonable disregard of his clearly established constitutional rights. Since all the elements of an implied waiver exist, defendants must be found to have waived their right to assert the attorney-client privilege by virtue of having raised the affirmative defense of immunity.[5]

4. Plaintiff also relies on *Garner v. Wolfinbarger, supra,* in support of his argument that the privilege is unavailable to defendants in this case. *Garner* held that the attorney-client privilege could not be asserted by corporate officers against stockholders in their class action suit alleging fraud and security law violations. However, the court is not persuaded by plaintiff's analogy to *Garner,* which emphasized that the position of corporate management is one of a trustee or fiduciary with attendant duties and obligations to the shareholders. 430 F.2d at 1101–1102. In the instant case, defendants'

duties and obligations run primarily to society; to the extent that defendants are "trustees" toward the inmates of the Washington State Penitentiary their duties and responsibilities certainly are not analogous to the duties corporate management owes to its stockholders.

5. Defendants argue that they seek immunity on the narrow basis of the extent of plaintiff's "clearly established constitutional rights" at the time of the alleged civil rights violations and not on the basis of legal advice they received. They conclude that,

██ Finally, it would be contrary to the purpose of the attorney-client privilege to allow assertion of it under the circumstances in this case. The privilege is an exception to the general duty to disclose and "its obstruction is plain and concrete . . . it is nonetheless an obstacle to the investigation of the truth". 8 Wigmore, § 2291 at 554. Therefore, the policy of the privilege is to protect confidential attorney-client relationships only to the extent that the injury the relationship would suffer from disclosure is greater than the benefit to be gained thereby. 8 Wigmore, § 2285 at 527.

In an ordinary case the obstruction is not likely to be great, for attorney-client communications are usually incidental to the lawsuit, notwithstanding their possible relevance, and other means of proof are normally available. In this case, however, the content of defendant's communications with their attorney is inextricably merged with the elements of plaintiff's case and defendants' affirmative defense. These communications are not incidental to the case; they inhere in the controversy itself, and to deny access to them would preclude the court from a fair and just determination of the issues. To allow assertion of the privilege in this manner would pervert its essential purpose and transform it into a potential tool for concealment of unconstitutional conduct behind a veil of confidentiality. Under these circumstances, the benefit to be gained from disclosure far outweighs the resulting injury to the attorney-client relationship. The privilege should not apply.

██ However, a major limitation on this exception must be emphasized. A substantial showing of merit to plaintiff's case must be made before a court should apply the exception to the attorney-client privilege defined herein. A high threshold requirement is essential to ensure the successful operation of a state's penal institutions, which requires some degree of confidentiality in the discretionary acts of prison administrators and personnel. The court recognizes that this confidentiality must give way, in the interests of justice, when an inmate's rights have been violated, but the court is also aware of the avalanche of prison litigation its ruling could trigger, absent some strict limitations.

The competing interest of protecting the constitutional rights of prison inmates and protecting institutional personnel from harassment are best accommodated by allowing discovery of legal advice only within the narrow confines outlined above, subject to the requirement that plaintiff affirmatively demonstrate the merit of his case before a court will order the defendant state official to lay bare his legal files.

██ Such a demonstration has been made in this case. Plaintiff has submitted affidavits and numerous depositions of reliable persons who state, under oath, that defendant Rhay harbored ill feelings toward plaintiff and that he persisted in his allegedly illegal conduct toward plaintiff after being put on notice by the attorney general that such conduct violated plaintiff's constitutional rights. These affidavits and depositions also corroborate the allegations in the complaint that the conditions of plaintiff's confinement were deplorable and that plaintiff was accorded no due process in his transfer to an isolation cell in the prison's mental health unit. Although the court does not accept these

---

since their defense is not based on advice of counsel, there has been no waiver of the attorney-client privilege. However, defendants' distinction misconstrues the qualified immunity defense, which has both subjective and objective aspects, as discussed above. By asserting the defense in any manner, defendants impose on plaintiff the burden of proving malice or disregard of settled, undisputable law. *Wood v. Strickland*, 420 U.S. at 321–322, 95 S.Ct. 992. Since legal advice received by defendants is highly probative of whether they acted with malice, plaintiff is entitled to discovery of such information to aid him in rebutting the defense defendants have raised.

allegations as true, it must consider them in a light favorable to plaintiff at the discovery stage of the litigation. Under these circumstances, the court is satisfied that the need for confidentiality must give way to plaintiff's need to have access to his proof. However, the court does not draw this conclusion lightly.

Therefore, the court finds that, by asserting their qualified immunity as an affirmative defense, defendants impliedly waived the right to assert the attorney-client privilege with respect to any legal advice or confidential communications with the Washington Attorney General that relate to the issues of malice toward plaintiff or knowledge of plaintiff's constitutional rights. Further, the court finds that, due to the nature of this suit, which puts the legal advice defendants received directly in issue, the policy behind the privilege is outweighed by the necessity of disclosure and the privilege is inapplicable.

Wherefore, plaintiff's motions to compel production of documents and to compel defendants to answer interrogatories and deposition questions is hereby granted.