FRIEDMAN, Circuit Judge.
This is an appeal by the United States from an interlocutory order of the Court of International Trade rejecting the government’s contention that it was not required to respond to discovery requests and an interrogatory of the appellee Zenith Radio Corporation (Zenith) because the information Zenith sought was privileged, and directing the government to respond. The Court of International Trade certified its order for immediate appeal and this court authorized the appeal, pursuant to 28 U.S.C. § 1292(d)(1). We reverse and remand.
I
This case grows out of an unsuccessful attempt by Zenith to prevent the United States from settling claims for antidump-ing duties and civil penalties against 22 importers of Japanese television receivers. On April 28, 1980, the United States effected a settlement of those claims under which the importers agreed to pay the United States a total of $77 million. A month later Zenith brought an action in the Court of International Trade to enjoin the settlement.
The court issued a preliminary injunction on December 9, 1980, barring the United States from implementing the settlement. In response to a motion by the United States to require Zenith to post a security bond for $11.5 million (the amount of interest the United States would earn on $77 million for one year), the court ordered a bond of $250,000 “to indemnify the defendant should it ultimately be determined that the defendant was wrongfully enjoined
Zenith’s complaint eventually was dismissed for lack of jurisdiction, and the preliminary injunction was dissolved on November 15, 1982.
The United States then filed a motion for assessment of damages of $250,000 against Zenith and the two sureties on the bond. The asserted damages cover interest the government lost because of the wrongful delay in implementing the settlement. Zenith opposed the motion, contending (1) that interest had accrued in favor of the government during the period of the injunction so that no damages were incurred, (2) that even if there were damages, the government failed to mitigate them because it had not enforced its legal and equitable right to interest from the importers, and (3) principles of equity and fairness preclude the award of damages.
Zenith served the United States with interrogatories and requests for production of documents. Prior thereto Zenith had learned that there had been a dispute between lawyers in the Department of Commerce and the Customs Service over whether the government should have sought interest from the importers. Zenith sought to obtain all documents and the substance of all communications relating to the question whether “interest would or should ac *1579 crue on the importers’ debts under the settlement agreements.”
The United States complied extensively with the discovery requests. It stated that there had been an inter-agency dispute and that at meetings in July 1983, Commerce, Customs and Justice Department officials had decided not to seek interest from the importers. The United States, however, asserted attorney-client, work product, or executive privilege with respect to 15 documents and interrogatory 30(c) insofar as it asked for the substance of the three July meetings. Zenith moved to compel discovery, arguing that by seeking damages the United States had waived its privileges.
After examining the material in camera, the Court of International Trade held that the government had waived its privilege with respect to all but one document and one sentence in another document. The court ordered the United States to produce the nonprivileged documents and fully to answer the interrogatory.
II
As the Court of International Trade noted, the courts have followed three different approaches in ruling on privileges asserted by plaintiffs. The first theory, which Zenith advocates, is the so-called “automatic waiver” rule under which a party seeking judicial relief waives whatever privilege he has. See, e.g., Independent Productions Corp. v. Loew’s, Inc., 22 F.R.D. 266 (S.D.N.Y.1958). A second theory balances the need for discovery against the need for protecting secrecy. See, e.g., Black Panther Party v. Smith, 661 F.2d 1243 (D.C.Cir.1981).
The Court of International Trade adopted and applied the third theory, which was enunciated in Hearn v. Rhay, 68 F.R.D. 574 (E.D.Wash.1975). Under that theory a plaintiff is treated as having waived his privileges if:
(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3)
application of the privilege would have denied the opposing party access to information vital to his defense.
Hearn v. Rhay, 68 F.R.D. at 581.
The Court of International Trade concluded that
the Hearn test is the better reasoned approach because it avoids the pitfalls of either extreme: (1) the rigidity of the automatic waiver rule, which might permit discovery of items not vital to the movant’s defense, and (2) the indeterminacy of the balancing test and the possibility that it may deprive a party of information vital to his defense. [Footnote omitted.]
Following its application of “the three-part Hearn test in its in camera inspection of each of the fifteen documents for which the government claims privilege,” the court concluded that, with the minor exceptions noted above, the government had waived its privileges with respect to the documents and the substance of the three meetings. The court did not explain or discuss its reasoning with respect to any particular document or information.
A. We agree with the Court of International Trade that this would not be an appropriate case in which to apply the automatic waiver rule, under which the United States would be deemed to have waived all its privileges by initiating the judicial proceeding for damages. This is not a case in which the party invoking judicial aid totally refuses to testify. In that situation it has been held that a plaintiff may not hide behind the shield of a privilege and withhold testimony that may materially aid the defense while invoking the aid of the court in prosecuting a claim. Independent Productions Corp. v. Loew’s, Inc., 22 F.R.D. 266, 277 (S.D.N.Y.1958). Here, as noted, the government complied fully and extensively with most of the discovery requests and objected only to the small number of documents and small amount of information with respect to which it claimed privilege. Nor is this a case involving First and Fifth Amendment privileges — situations in which the automatic waiver rule has been *1580 applied. See Lyons v. Johnson, 415 F.2d 540 (9th Cir.1969), cert. denied, 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970); Anderson v. Nixon, 444 F.Supp. 1195 (D.D.C.1978).
Here the privileges the government asserted covered attorney-client communications, attorneys’ work product, and the communications, discussions, and deliberations among government officials that the executive privilege protects. These privileges involve subtle and sensitive questions and ordinarily should not be breached without a more penetrating analysis than the automatic waiver rule involves.
The attorney-client privilege promotes “confidential relations that may well deal with the very suit in question.” 4 Moore’s Federal Practice K 26.60[6] (2d ed. 1984). The work product privilege protects the attorney’s thought processes and legal recommendations, which also may bear directly on the suit in question. The executive privilege, which has been analogized to the work product privilege, protects agency officials’ deliberations, advisory opinions and recommendations in order to promote frank discussion of legal or policy matters in the decision-making process. Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939, 946, 141 Ct.Cl. 38 (1958); see also NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975). A party does not automatically waive these privileges, which protect the formulation of legal opinions or litigation strategy, simply by bringing suit.
B. The government contends that the proper standard for this case is the balancing test rather than the Hearn test the Court of International Trade applied, but that even under the latter standard it should have prevailed. We find it unnecessary to decide which of these two standards is appropriate in this case, since we conclude that under either standard the government’s claim of privilege should have been allowed.
Under both the balancing test and Hearn, the party seeking the information must make a strong showing of need in order to breach the privilege. Indeed, Hearn states that the information sought must be “vital to his defense.” Zenith has not made a sufficient showing of need to justify obtaining the privileged information.
The information with respect to which the government claimed privilege relates to the details of the disagreement among government officials over whether, under the settlement agreements, the government was entitled to recover interest on the $77 million the importers agreed to pay. The material contains various agency officials’ opinions and recommendations on this legal issue, including memoranda from Justice Department lawyers. Zenith argues that this material is relevant to its defenses, including the claim that the government failed to mitigate its damages because it could have recovered from the parties to the settlement the interest it seeks to collect from Zenith.
The question whether the government was entitled to recover interest under the settlement agreements is an issue of law, the answer to which turns upon an interpretation of those agreements. When it sought this material, Zenith already knew about the internal disagreement within the government over the government’s entitlement to such interest. If the views of the parties to or the drafters of the settlement agreements are pertinent to the resolution of that legal issue — a question on which we intimate no opinion — Zenith has not given any convincing reason why it could not obtain that information by deposing those individuals.
The matters that Zenith seeks to probe by obtaining this information are the views of the various government officials participating in the discussions and conferences regarding the interest question, what was said at those conferences, the advice those officials gave and received, and the extent to which those officials explored the pertinent legal principles and precedents governing the accrual of interest. These matters are tangential to and remote from the central legal issue in the case. To whatever extent they may be relevant to Zenith’s *1581 defenses, their probative value is too weak to justify breaching the important privileges the government asserted in declining to produce the information.
Like the Court of International Trade, we have reviewed this material in camera. Unlike that court, however, we conclude that the government’s claims of privilege respecting this material should be upheld.
Ill
A third part of the court’s order compelled responses to several interrogatories asking for the identity of government officials who participated in consideration of the interest issue and the identification of relevant memoranda and contacts in 1983 between officials and private parties regarding this issue. The government asserted a generalized claim of privilege with regard to events subsequent to July 29, 1983, the date it decided not to seek interest from the importers. The Court of International Trade rejected the generalized privilege claim, on the ground that “occurrences subsequent to July 29, 1983 may refer to prior events.”
It is unclear whether the government is challenging this part of the order in this appeal. If it is, we agree with the court that the generalized claim of privilege cannot be sustained on the ground the government gave. Communications and discussions after the government decided not to seek interest might illuminate and clarify the prior events. Any government claim of privilege should be made with regard to specific documents and communications and specify the particular privilege claimed and the basis for its assertion.
The order of the Court of International Trade, directing the United States to produce the documents and to answer a portion of interrogatory 30(c), with respect to which the court denied the government’s claim of privilege, is reversed, and the case is remanded to that court.
REVERSED AND REMANDED.