**In re James Roland GORDON and Marilyn June Baldridge Gordon.**

**Marilyn June Baldridge GORDON, Plaintiff,**

v.

**FRIEDMAN'S, INC., Defendant.**

Bankruptcy No. 95–42464.
Adversary No. 97–4012.

United States Bankruptcy Court, N.D. Mississippi.

April 25, 1997.

John H. Daniels, III, Dyer, Dyer, Jones & Daniels, Greenville, MS, for Marilyn Gordon.

W. Kurt Henke, Elizabeth T. Bufkin, Henke, Heaton & Bufkin, P.A., Clarksdale, MS, for Friedman's, Inc.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is the demand for a jury trial filed by the plaintiff, Marilyn June Baldridge Gordon; response to said demand having been filed by the defendant, Friedman's, Inc.; as well as, a motion in limine requesting the court to determine whether the plaintiff can invoke the attorney-client privilege regarding certain conversations she may have had with her bankruptcy attorney; and the court having heard and considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (C), (G), and (O).

### II.

In June, 1995, the plaintiff purchased several items of jewelry on credit from the defendant. Thereafter, on August 28, 1995, the plaintiff and her husband, James Roland Gordon, filed a joint petition for relief pursuant to Chapter 13 of the Bankruptcy Code.

On May 6, 1996, the plaintiff filed a complaint against the defendant in the United States District Court for the Northern District of Mississippi, seeking actual and punitive damages, costs, and attorney's fees, resulting from certain post-petition collection activities conducted by the defendant while

the automatic stay, provided by 11 U.S.C. § 362(a), was in effect. The plaintiff's complaint asserts the common law torts of intentional infliction of emotional distress, negligent infliction of emotional distress, and slander. Factually, the plaintiff alleges that the defendant on several occasions contacted her telephonically to admonish her that an arrest warrant would be issued if she failed to pay the debt owed to the defendant. Additionally, the plaintiff alleges that the defendant mailed her a letter which advised that criminal felony charges would be brought against her, and that she could be incarcerated in the penitentiary, for her failure to pay this account.

After the issues were properly joined, the defendant filed a motion for summary judgment. As a result of this motion, the district court concluded that the causes of action asserted by the plaintiff were, in effect, claims under 11 U.S.C. § 362(h). The cause of action was then transferred to this court. A preliminary question that must be resolved is whether the plaintiff is entitled to a jury trial.

### III.

■ This court has examined the factual underpinnings of the plaintiff's complaint and concurs with the district court that each of the causes of action, as alleged, could constitute a violation of the automatic stay as contemplated by 11 U.S.C. § 362(h), which provides as follows:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Indeed, in the absence of the plaintiff's filing a bankruptcy case, she would clearly be entitled to a jury trial because of the nature of her common law tort allegations. However, the court cannot ignore that a bankruptcy case has been filed, and, significantly, that the defendant has filed a proof of claim against the bankruptcy estate.

The court is cognizant of the Supreme Court's decisions in *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966),

*Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), *Atlas Roofing v. Occupational Safety and Health Review Commission*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), *Tull v. U.S.*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), as well as, *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), particularly their implications on a party's right to a jury trial. However, the most significant case concerning this issue is the Supreme Court's fairly recent decision in *Granfinanciera, S.A. v. Nordberg (In re Chase and Sanborn Corp.)*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), which deals explicitly with a party's right to a jury trial in a bankruptcy context.

In *Granfinanciera*, Nordberg, the bankruptcy trustee, filed a fraudulent transfer cause of action against Granfinanciera, S.A., and Medex, Ltd., two Columbian entities. Both of the defendants demanded a trial by jury. The bankruptcy court denied the jury trial requests and after a bench trial entered a monetary judgment against both defendants on constructive fraud counts. The district court and the Eleventh Circuit affirmed, holding that actions to recover fraudulent conveyances are equitable in nature, even when money damages are sought, and thus, a jury trial would not have been appropriate.

Justice Brennan, writing for the majority, began his analysis with a discussion of whether the proceeding was equitable in nature or legal in nature. He concluded, after an exhaustive examination of the underpinnings of the cause of action, that an action to recover monetary damages is legal and not equitable. He added that Congress could not convert a legal claim to an equitable claim, avoiding the Seventh Amendment jury trial right, by relabeling the cause of action a core bankruptcy proceeding.

The court then discussed whether the cause of action involved public as opposed to private rights. Justice Brennan indicated that the trial of a lawsuit involving private rights cannot be assigned by Congress to a non-Article III court. Previously, lawsuits involving private rights had been considered as causes of action solely between private

citizens where the United States government was not a party. However, the court, in a back door approach, modified the earlier definition of private rights by expanding the definition of public rights, as follows:

> Congress, acting for a valid legislative purpose pursuant to its Article I powers, creates a private right that is so closely related into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary.

The aforementioned language, loosely translated, means that public rights can involve the allowance and disallowance of claims in the bankruptcy estate or the adjustment of the debtor-creditor relationship when the government is not a party to the proceeding. Concluding the analysis, the court then said that since the defendants had not filed claims against the bankruptcy estate that the cause of action initiated by the trustee amounted only to a lawsuit affecting private rights.

Thus, having concluded that the proceeding was essentially legal in nature, as well as, involving only private rights, the court said that the defendants were entitled to a jury trial which is guaranteed by the Seventh Amendment to the Constitution.

### IV.

As noted earlier, the district court has already decided that the plaintiff's causes of action are essentially claims arising post-petition because of alleged violations of the automatic stay. The remedy for these violations, which is exclusively peculiar to bankruptcy, is found in 11 U.S.C. § 362(h). As noted above, standing alone, the plaintiff's causes of action are legal in nature, rather than equitable, and the government is obviously not a party to the proceeding. However, the plaintiff has elected to file bankruptcy, and the defendant has filed a proof of claim as a creditor of the bankruptcy estate. The adjustment of the debtor-creditor relationship has been brought into play. Because of these circumstances and because a specific remedy is fashioned in the Bankruptcy Code for this type conduct, the court is of the opinion that the plaintiff's causes of action fit within the expanded definition of public rights as set forth in the *Granfinanciera* decision. Therefore, the court concludes that the plaintiff is not entitled to a jury trial.

■ The court hastens to add that it literally sees hundreds of pleadings each year seeking redress for violations of the automatic stay. Many of these causes of action could be framed by the creative pleader as a common law tort complaint. The available judicial resources are completely insufficient to permit a jury trial in every § 362(h) cause of action. The expense, in a time of fiscal conservatism, would be enormous. Although limited judicial resources is not a legitimate reason to deny a party the right to a jury trial, if one is indeed mandated by the Constitution's Seventh Amendment, the policy concerns should not be overlooked.

### V.

■ The second issue before the court is whether the plaintiff can invoke the attorney-client privilege as to certain communications that she had with her bankruptcy attorney, Michael Boyd, who is not her attorney in this adversary proceeding. As noted earlier, the plaintiff has asserted a claim for damages for emotional distress resulting from the defendant's threats to have her incarcerated for her failure to pay the indebtedness owed to the defendant. Based on these factual allegations, the plaintiff is seeking substantial actual and punitive damages. The plaintiff has also acknowledged that she conferred with her bankruptcy attorney after having received the telephonic threats and the defendant's letter.

The following passage is extracted from Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine*, (American Bar Association, 3rd ed.1997):

> We are told that we cannot have our cake and eat it too. What this means in the privilege context is that a litigant cannot at one and the same time place privileged matters into issue and also assert that those matters nonetheless remain privileged and not subject to full disclosure and exploration. This point arises with

frequency in insurance coverage litigation and legal malpractice suits.

But merely instituting litigation does not necessarily mean one has put all attorney-client communications "at issue." There is a "fairness" tension at work in determining precisely what has been placed at issue and what must be disclosed lest the truth be garbled.

When a matter has been placed into issue, any resulting waiver has been deemed an "implied" or "anticipatory" waiver. The underlying rationale for such waivers is that because the matter would be subject to proof at trial, it must be subject to discovery in the pretrial phase. To find an implied waiver of the privilege by virtue of putting a matter into dispute, the following factors have been suggested as necessary:

(1) the party, asserting the privilege must do so by some affirmative act, such as filing suit or raising a defense;

(2) through the affirmative act, the party asserting the privilege must put the protected information at issue by making it relevant to the case; and

(3) application of the privilege would deny the party seeking the discovery access to information vital to that party's defense.

*Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975). A party is treated as having waived its privilege if "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense."

The *Hearn* factors have been widely followed. Other courts have looked primarily at issues such as intention and fairness. If there is an intention to use privileged materials as a sword, full disclosure will generally be permitted on the grounds of fairness. One cannot rely on a claim whose contours one refuses to permit the adversary to explore fully.

*Id.* at pages 209, 210.

A prerequisite for implied waiver is that the advice or conduct of a lawyer must be placed at issue in litigation between the client and the lawyer, or, as is more frequently the case, in litigation between third parties, when the lawyer's advice or conduct is explicitly or implicitly made the basis of an offense or defense.

*Id.* at page 210.

The matter that has been placed at issue by the plaintiff through the filing of her complaint against the defendant is the amount of damages, if any, that she should be awarded because of the infliction of the emotional distress by the defendant. It is highly probable that the plaintiff's bankruptcy attorney advised her that the defendant could not have her incarcerated for her failure to pay a civil debt. Had this advice been given, the plaintiff's damages could perhaps be mitigated. The court is of the opinion that the plaintiff cannot ask for these damages and, at the same time, assert the attorney-client privilege to thwart the possibility of damage mitigation. As such, the court concludes that the plaintiff has impliedly waived the attorney-client privilege in this limited area. The defendant will be permitted to reconvene the discovery deposition of Attorney Michael Boyd and make inquiry as to what advice he gave the plaintiff in response to the verbal and written threats allegedly made by the defendant to have her incarcerated.

An order will be entered consistent with this opinion.