THAI–LAO LIGNITE (THAILAND) CO., LTD., et al., Petitioners,

v.

GOVERNMENT OF the LAO PEOPLE'S DEMOCRATIC REPUBLIC, Respondent.

No. 10 Civ. 05256(KMW)(DF).

United States District Court, S.D. New York.

May 17, 2013.

---

James Evan Berger, King & Spalding LLP, New York, NY, for Petitioners.

Anthony J. Hatab, Dressel & Hatab, George A. Bermann, Columbia University School of Law, Joel Maximino Melendez, Robert Kelsey Kry, Steven Francis Molo, Molo Lamken LLP, New York, NY, David J. Branson, Sole Practitioner, Anthony Frazier King, King Branson LLC, Washington, DC, for Respondent.

## MEMORANDUM AND ORDER

DEBRA FREEMAN, United States Magistrate Judge.

On March 12, 2013, the Court (Wood, J.) issued an Order permitting Petitioners to conduct limited discovery "in order to determine whether the failure [of Respondent] to file the Malaysian set-aside proceeding was due to counsel's failure to inform Respondent of the deadline, as Mr. Souralay attested; a financial issue, as Mr. Branson later stated; or some other cause." (Order, dated Mar. 12, 2013 ("3/12/13 Order") (Dkt. 226), at 4.[1]) Pursuant to that Order, Petitioners have sought discovery from Respondent regarding the Malaysian set-aside proceeding, and particularly the timing of Respondent's commencement of that proceeding. In response to Petitioners' document requests,

Respondent has produced a fair amount of material in heavily redacted form, claiming attorney-client privilege. Petitioners now seek to compel the disclosure of some or all of the redacted communications, on the grounds that privilege has either not been established or has been waived. The parties have submitted correspondence to this Court regarding the privilege issue, and the Court has reviewed that correspondence. For the reasons set forth herein, Petitioners' motion to compel is denied, except that Respondent is directed to produce certain documents to this Court for *in camera* review.

### Choice of Law

Petitioners first argue that Malaysian law applies to the parties' privilege dispute, and further contend that, unless Respondent establishes that the redacted communications are privileged under Malaysian law, those communications must be disclosed in their entirety. (*See* Letter to this Court from James E. Berger, Esq., dated Apr. 30, 2013 ("Pet. Ltr."), at 2–3.) Respondent counters that Malaysian law with respect to attorney-client privilege is at least as expansive as New York privilege law. (*See* Letter to this Court from Steven F. Molo, Esq., dated May 3, 2013 ("Resp. Ltr."), at 6 n. 4 (citing Ex. F (excerpt from Malaysian statute)).) Further, Respondent contends that New York law should govern the parties' dispute, unless Petitioners, in arguing in favor of Malaysian law, actually demonstrate that Malaysian law is different. (*Id.*) Petitioners do not mention the choice-of-law issue in their reply, and no party cites any substantive Malaysian law in its briefing.

Given that, based on Respondent's submission, Malaysian privilege law does appear to be at broad as New York privilege

---

1. Familiarity with the 3/12/13 Order is assumed, as is familiarity with the underlying facts set out in more detail in that Order and in the parties' letters regarding their current discovery dispute.

law, Petitioners' raising a choice-of-law issue does not help them here. To the extent that Respondent has shown certain communications to be privileged under New York law, it would appear that Respondent has similarly shown those communications to be privileged under Malaysian law, and Petitioners do not seriously argue to the contrary.

### Crime/Fraud Exception to Privilege

■ Petitioners argue that the crime/fraud exception to the attorney-client privilege applies because the communications in question relate to what Petitioners suggest was a knowing misrepresentation to this Court about the status of the Malaysian set-aside proceeding. In this regard, Petitioners suggest that information already available about the reasons why that proceeding was filed in October, rather than September, 2010, affords reason to believe that Respondent's counsel knew that the proceeding had not yet been commenced, when he told the Court that it had. (*See* Pet. Ltr., at 4–7.) Respondent, however, correctly notes (Resp. Ltr., at 8–9) that the crime/fraud exception to privilege does not come into play merely because a crime or fraud is believed to have occurred, but rather when there is reason to believe that the otherwise-privileged communication was made "in furtherance" of that bad act, *see In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir.1995). While Petitioners do not dispute that this is the standard, they nonetheless give the Court no reason to believe that the communications they seek were made in furtherance of the fraud they describe—instead, even in their reply, Petitioners focus only on what they contend is evidence that Respondent made a knowing or intentional misrepresentation to this Court. (*See* Letter to this Court from James E. Berger, Esq., dated May 4, 2013 ("Pet. Reply Ltr."), at 2–5.) This is insufficient.

■ Petitioners fare better, though, when they argue that the standard to obtain *in camera* review by the Court is less difficult to satisfy. See (Pet. Reply Ltr., at 5.) In the Court's discretion, *in camera* review may be granted upon "a showing of a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). Petitioners have made an adequate showing in this regard. Accordingly, no later than May 22, 2013, Respondent is directed to produce to this Court for *in camera* review (1) all communications, in unredacted form, "to, from, or between Mssrs. Branson or Hatab concerning ... the failure to file the set aside by September 30, 2010, and the potential consequences of such failure on the proceedings in this Court" (Letter to this Court from James E. Berger, Esq., dated Apr, 30, 2013 ("Pet. Ltr."), at 7), and (2) all such communications dated on or after August 15, 2010, concerning "the preparation and filing of the set[-]aside action" (*id.*)[2] Following *in camera* review, the Court will determine whether any of the submitted communications are subject to disclosure under the crime/fraud exception to the attorney-client privilege.

### Waiver of Privilege Based on Selective Disclosure

Petitioners also argue that Respondent waived privilege by making selective dis-

---

**2.** Petitioners have requested this second category of documents without time limitation, but have noted the particular relevance of communications made "in the weeks leading up to and after September 30[, 2010]." (*Id.*)

Under the circumstances, the Court has selected August 15, 2010, as a reasonable commencement date for the period for which communications should be reviewed.

closure of privileged communications. Specifically, pointing to partially redacted memoranda and emails, Petitioners note that Respondent has disclosed "self-serving references to its arbitration's counsel's supposed failure to advise of the [90–day filing] deadline [for commencing the Malaysian set-aside proceeding]," while redacting surrounding information, "sometimes in the same sentence." (Pet. Ltr, at 7.) According to Petitioners, Respondent should not be permitted to disclose, selectively, only those portions of attorney-client communications that are favorable to its position, while redacting other portions of those same communications.

In response to this argument, Respondent seems to take the position that the scope of its privilege disclosure to date has been dictated by what it had placed in issue—either before the Malaysian tribunal or before this Court on the pending motion to vacate—and that it should not be required to disclose additional privileged communications outside that scope. (*See* Resp. Ltr., at 9–10.)[3] Respondent also notes that, at the time that it disclosed the communications that Petitioners would now use as a wedge to obtain further disclosure, it asked Petitioners' counsel, by email, to confirm that Petitioners would *not* take the position that the production itself constituted a privilege waiver, and that Petitioners' counsel so confirmed. (*See id.*, citing Ex. G thereto, at 1, 2.) The parties now dispute the meaning of their prior email exchange, but it does appear from the face of counsel's emails that, while Petitioners may have been concerned that Respondent had, through redactions, unduly narrowed the scope of the "at-issue" waiver, Petitioners were in fact agreeing not to contend that Respondent's disclosure of communications because of that waiver would itself waive privilege further.

In any event, it is a valid argument that, if Respondent was correct as to the scope of the underlying at-issue waiver, then it cannot be charged with separately waiving privilege beyond the scope of that initial waiver, merely by disclosing communications that fell within it. If Respondent defined the parameters of the original waiver too narrowly, then additional disclosures may be required, but not under the law governing waiver by "selective disclosure"; rather, any such additional disclosures would be required under the law concerning at-issue waiver, as discussed below.

### *"At-issue" Waiver of Privilege*

■ Petitioners argue that, when Respondent represented to the Malaysian courts that "the reason that it failed to timely file the Malaysian proceeding was due to its arbitration counsel's failure to advise it of the statute of limitations" (Pet. Ltr., at 2), and that it "acted expediently to file the [set-aside] application as soon as it was informed by its legal counsel about the timeframes applicable" (Pet. Ltr., at 8 (citing *id.*, Ex. F)), Respondent placed "at issue" the reasons for its failure to make a timely filing. Petitioner similarly argues that, when Respondent represented to this Court that its delay from September to October, 2010, in making the Malaysian filing, was occasioned by a monetary issue, Respondent placed "at issue" its reasons for that latest portion of its filing delay. (*See* Pet. Ltr., at 2–3.) According to Peti-

---

3. At one point in its submission, Respondent states that the material it disclosed was "non-privileged" (*see id.*, at 9), but, at best as the Court can understand, what Respondent means by this is that the disclosed material consisted of attorney-client communications which Respondent had agreed to produce as falling within the scope of an "at-issue" privilege waiver (*see generally id.*, at 9–14).

tioners, Respondent's statements to both the Malaysian courts and this Court together effected a waiver of attorney-client privilege as to all communications on the subject of any and all reasons for any aspect of Respondent's filing delay. Based on this purported waiver, Petitioners now seek, *inter alia,* Respondent's full disclosure of several legal memoranda that Petitioners believe may shed light on various reasons for Respondent's delay that Respondent has not disclosed. (*See* Pet. Ltr., at 8–10.) Petitioners further argue that, by essentially claiming to the Malaysian courts that it acted in good faith, Respondent placed its "good faith" at issue, which alone provides a basis for an "at-issue" privilege waiver.

Although Respondent concedes that its statements gave rise to an "at-issue" waiver, it contends that this waiver should be found to cover only to those communications "reflecting legal advice about the existence of the 90–day deadline and whether it could be extended," and not to cover attorney-client communications regarding any other possible reasons for its delay in filing. (Resp. Ltr., at 10–11.) Respondent further argues that its assertion that it acted with "expediency," once it discovered the missed deadline, is an assertion of fact that does not place legal advice at issue and does not itself require disclosure of any privileged communications.[4] (*Id.,* at

11.) Respondent also argues that it has provided detailed descriptions of the memoranda to which Petitioner refers—descriptions that, according to Respondent, show that Petitioners' suspicions about the redacted contents are incorrect. (*Id.,* at 12–13.)

■ A party puts the content of legal advice at issue, waiving the attorney-client privilege, if it *"rel[ies]* on privileged advice from [its] counsel to make [its] claim or defense." *In re Cnty. of Erie,* 546 F.3d 222, 229 (2d Cir.2008) (emphasis in original). Although, in *Erie,* the court left open the possibility that the at-issue waiver doctrine could also come into play when a party has asserted "a good faith or state of mind defense," *id.,* the court explicitly rejected the broad, relevance-based test for at-issue waiver enunciated in the frequently-cited case *of Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975).[5] After *Erie,* courts within this circuit have found that, where a party relies on privileged communications to explain the reason for its actions, it does not waive privilege as to communications that might indicate *additional* reasons. *See Leviton Mfg. Co. v. Greenberg Traurig LLP,* No. 09 Civ. 8083(GBD)(THK), 2010 WL 4983183, at *5–6 (S.D.N.Y. Dec. 6, 2010) (holding plaintiff's claim that defendant's faulty legal representation caused it to lose valuable potential patent did not forfeit privi-

---

4. Respondent does not explicitly address Petitioners' additional argument that, by asserting, in this Court, that the delay in fall of 2010 was due to a monetary issue with counsel, Respondent has impliedly waived privilege over "whether there was some other reason for why Respondent did not act in a more timely fashion." (*See* Pet. Ltr., at 9–10.) Nevertheless, Respondent's general position that disclosures regarding *one* reason for a delay does not give rise to a waiver of privilege regarding *other* potential reasons for the delay (*see* Resp. Ltr., at 11–12), discussed *infra,* applies with equal force to both the statements Respondent made to the Malay-

sian courts and the statements Respondent then made here.

5. Under *Hearn,* privilege could be waived if "(1) the assertion of the privilege was a result of some affirmative act, such as filing suit or pleading in response to a claim; (2) through the affirmative act, the asserting party has put the protected information at issue by making it relevant to the case; and (3) the application of the privilege would have denied the opposing party access to information vital to the defense." 546 F.3d at 226 (citations omitted).

lege as to communications regarding whether potential patent would have had limited economic value for other reasons), *report and recommendation adopted by* 2011 WL 2946380 (July 14, 2011); *U.S. v. Ghailani,* 751 F.Supp.2d 498, 501 (S.D.N.Y.2010) (rejecting defendant's contention that privilege was waived as to "communications tending to undercut the government's stated justification for the delay" in bringing him to trial because, even though communications were "pertinent," government did not seek to rely on communications in question). A "good faith defense," further, is not simply any assertion that a party, in general, acted in good faith, but rather an assertion that the party acted with a "belief in the lawfulness of his own conduct." *Arista Records LLC v. Lime Group LLC,* No. 06 Civ. 5936(KMW), 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011).

■ Respondent has not relied, including in its assertions that it acted with "expediency," on privileged communications regarding *other* possible reasons for its delay in filing the Malaysian set-aside proceeding, nor is caselaw regarding the "good faith defense" relevant here. Thus, under *Erie,* the "at-issue" waiver of attorney-client privilege that was effected by Respondent's statements to the Malaysian courts must be held to extend only to communications concerning the advice that Respondent did or did not receive regarding the existence of the 90–day deadline and whether that deadline could be extended. Similarly, any "at-issue" waiver that was effected by Respondent's statements to this Court must be limited to communications concerning the monetary issue that purportedly kept Respondent from filing the Malaysian set-aside application in September, 2010.

Although Petitioners also assert that Respondent has likely withheld communications that would fall within the scope of such at-issue waivers, even if narrowly defined (*see* Pet. Reply Ltr., at 8), Petitioners have not made a showing sufficient to support such an assertion. In particular, with respect to the memorandum of Professor Xavier Singh, which presents the closest question for the Court, Petitioners have ultimately failed to offer any reason to doubt Respondent's detailed explanation as to why the redacted portions of this memorandum fall outside the scope of any waiver. (*See* Resp. Ltr., at 13.)

### Waiver of Privilege by Disclosure to Third–Party

■ Petitioners finally contend that both attorney-client privilege and work-product protection have been waived as to any communications shared with attorney Sean C. Hill, counsel for Banpu Public Company Ltd. ("Banpu") and Hongsa Power Co. (Pet. Ltr, at 10–12–.) On this point, Respondent argues that it is entitled to assert a joint-defense or common-interest privilege over documents shared with Hill, as Banpu, Petitioners' former joint-venture partner, is itself now adverse to Petitioners, in a separate litigation arising out of the same facts as the arbitration underlying this action. The Court, however, need not reach the question of whether such a privilege applies, as there is no dispute that the Hill communications in question are work product, and work product protection is not waived by disclosure to a third party unless that disclosure materially increases the likelihood of disclosure to an adversary. (*See* Order, dated Nov. 26, 2012 (Dkt. 183), at 10.) Petitioners have not shown that disclosure to Hill made disclosure to an adversary more likely, and therefore work-product protection has not been waived.

SO ORDERED.