Joseph H. BEAVERS, Plaintiff,

v.

Carey HOBBS, Defendant.

Carey HOBBS, Third–Party Plaintiff,

v.

COMPASS TRANSPORT, INC., f/k/a Universal Express, Ltd., f/k/a Compass Transit, Inc., Third–Party Defendant.

COMPASS TRANSPORT, INC., f/k/a Universal Express, Ltd., f/k/a Compass Transit, Inc., Third–Party Defendant/Third–Party Plaintiff,

v.

Joseph H. BEAVERS, Cross–Claim Defendant

and

P.E.J., Inc., Third–Party Defendant.

P.E.J., INC., Third–Party Defendant/Counterclaim Plaintiff,

v.

COMPASS TRANSPORT, INC., f/k/a Universal Express, Ltd., f/k/a Compass Transit, Inc., Third–Party Counterclaim Defendant.

No. 4–96–CV–70371.

United States District Court, S.D. Iowa, Central Division.

Nov. 21, 1997.

Daniel Stamatelos, Stamatelos, Kenyon & McCandless, West Des Moines, IA, Joseph B. Saluri, Nick Critelli Assoc., Nicholas T. Critelli, III, Critelli & Associates, P.C., Des Moines, IA, for Plaintiff.

Mark E. Weinhard, David K. Basler, Belin, Lamson, McCormick, Zumbach, & Flynn, P.C., Des Moines, IA, for Defendant.

Mark E. Weinhardt, David K. Basler, Belin, Lamson, McCormick, Zumbach & Flynn, P.C., Joseph R. Gunderson, Dreher, Simpson, Jensen, et al., Des Moines, IA, for Third–Party Defendant.

Mark E. Weinhardt, David K. Basler, Belin, Lamson, McCormick, Zumbach & Flynn, P.C., D. Scott Simpson, Joseph R. Gunderson, Dreher, Simpson, Jensen, et al., Des Moines, IA, for Third–Party Plaintiff.

## RULING ON MOTION TO COMPEL OF PLAINTIFF JOSEPH BEAVERS AND THIRD PARTY DEFENDANT P.E.J.

WALTERS, United States Magistrate Judge.

### I.

The above resisted motion is before the Court. This case involves the purchase of the assets of Mr. Beavers' trucking company in September 1994 by Compass/Universal. There are numerous claims between the parties. Relevant for present purposes is the third-party action by Compass/Universal against Beavers and his company, P.E.J. (hereinafter collectively referred to as "Beavers"), for fraudulent misrepresentation in connection with the transaction, specifically concerning the condition of equipment, customer contracts, payments to creditors, changes in P.E.J.'s financial position, the listing of assets and the like. Beavers served requests for production of documents on Compass/Universal and the inspection occurred on May 1, 1997 at the offices of Compass/Universal in Urbandale. Approximately seventy-eight boxes of documents were made available for inspection by Beavers' counsel. Compass/Universal is winding up its affairs and to reduce costs, depended on consultant Robert Wright's services in reviewing and assembling documents for production. Wright is a CPA. Compass/Universal's attorney, Mr. Joseph Gunderson, instructed Wright to remove all "attorney related documents" from the files before producing them. Mr. Gunderson did not review the documents prior to production. Wright did, however, and attempted to remove attorney–related documents as instructed. He evidently did not understand attorney fee statements from the several law firms which have represented Compass/Universal were within his instructions. These along with a few pieces of correspondence and memoranda were contained in folders clearly marked with the name of each law firm. They were produced to Beavers' counsel.

Beavers' counsel reviewed the materials in the attorney files along with the other documents. At the request of Beavers' counsel,

Wright copied a number of the billing records. At the end of the day Mr. Gunderson returned to Compass/Universal's offices. He learned of the production and partial copying and confiscated the copies. By the present motion Beavers asks the Court to compel Compass/Universal to produce the documents previously inspected which are now being withheld on the ground of attorney-client privilege.

The documents in question have been produced by Compass/Universal's counsel for *in camera* inspection in the file folders in which they were maintained. The Court has carefully reviewed these materials. At the Court's request, Beavers has filed a statement identifying the subject matter to which it believes attorney-client material may be relevant:

(a) The transaction between Compass/Universal and Mr. Beavers/P.E.J., Inc.;

(b) The due diligence performed by attorneys with respect to the transaction;

(c) Advice with respect to structuring the deal; and

(d) Subsequent advice with respect to the resale of assets.

## II.

Beavers proceeds on theories of both implied and express waiver of the attorney-client privilege. Citing *Squealer Feeds v. Pickering,* 530 N.W.2d 678 (Iowa 1995), Beavers argues an implied waiver has occurred as a result of the allegations of fraud concerning the asset sale. It asserts attorney-client communications on the subjects above go to "the heart of the claim in controversy." *Id.* at 684 quoting 81 Am.Jur.2d Witnesses § 348, at 323 (1992). Beavers believes the investigation and advice of counsel concerning the deal may show Compass/Universal was aware of the facts it now claims were misrepresented and/or relied on counsel's advice rather than Beavers' representations.

■ *Squealer* articulates the general proposition for implied waiver. Implied waiver usually results when a client testifies about a part of an attorney-client communication, when the attorney-client relationship is placed directly in issue, or when an attorney's advice is cited as an element of a claim or defense. *See Sedco Int'l S.A. v. Cory,* 683 F.2d 1201, 1206 (8th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982). The mere claim of fraud by a party to a transaction in which he was represented by counsel is not a wholesale waiver of the attorney-client privilege. The claim may open the door to an implied waiver "to assert the privilege to prevent disclosure of communications which might have proven [the client] did not rely" on the misrepresentations or that reliance was unreasonable. *Id.* However, the issue can only be determined by examining specific attorney-client communications in light of the fraud claims. This case is several steps short of that. Beavers may explore in discovery the extent to which counsel was engaged to make due diligence and give business advice. Beavers may also discover factual information concerning the transaction obtained by Compass/Universal's attorneys from independent sources and conveyed to Compass/Universal. *Id.* at 1205. If disputes arise with respect to the content of specific communications, the Court can resolve them. At the present there is no basis to find implied waiver with respect to any identified communication.

■ Mr. Wright disclosed information Mr. Gunderson had intended to withhold from discovery. While the Iowa Supreme Court has not adopted a standard by which to assess waiver by inadvertent disclosure, the parties seem to agree that the Eighth Circuit's opinion in *Gray v. Bicknell,* 86 F.3d 1472 (8th Cir.1996) is a reasonable basis on which to determine the issue. Before getting to *Gray,* however, there is a threshold question whether the attorney billing statements are subject to the attorney-client privilege. The descriptions of the various services performed do not appear to be substantive or to suggest the content of privileged communications.[1] Most of the entries simply describe

---

1. Counsel for Compass/Universal has not identified any specific entries which are alleged to reveal a confidential client communication.

what the attorney did, when, and for what amount of time. Generally billing records which do not reveal confidential information are subject to discovery and not protected by the attorney–client privilege. *See Leach v. Quality Health Serv.*, 162 F.R.D. 499, 501 (E.D.Pa.1995); *Bieter Co. v. Blomquist*, 156 F.R.D. 173, 180 (D.Minn.1994); *Rayman v. American Charter Fed. Sav. & Loan Ass'n*, 148 F.R.D. 647, 660 (D.Neb.1993); E. Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 50 (3d ed.1997). It is thus doubtful the privilege applies to most of the documents in question.

 Assuming the privilege does apply to some degree, the Court believes it has been waived with respect to the billing statements. In *Gray*, the Eighth Circuit, trying to fathom the standard the Missouri courts would adopt, predicted Missouri would adopt the "middle of the road" test for inadvertent disclosures. 86 F.3d at 1482–83. The court was critical of the bookend at each end of the analytical spectrum, the lenient approach and the strict approach. It is likely the circuit would predict Iowa would be as reasonable as Missouri and follow the middle of the road standard in this forum. The *Gray* standard looks at five considerations:

> (1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interests of justice would be served by relieving the party of its error.

*Id.* at 1484. Here the precautions were reasonable, but Mr. Wright misunderstood his instructions. Wright reviewed the documents, including those under dispute, and produced them. The disclosure was not accidental, it was inadvertent only because attorney and client were not on the same wave length. Miscommunication about an important matter is not as easily forgiven as oversight in failing to pick out one or two documents in a sea of many. The number of

inadvertent disclosures is significant, perhaps a hundred pages or so. It is not material that overall a very large document production consisting of thousands of documents was involved because, again, the documents had been reviewed and were readily identifiable in clearly marked files. As to the extent of disclosures, they involve primarily billing information. There are a handful of letters between attorney and client, and these are discussed separately below. Counsel was reasonably prompt in attempting to rectify the disclosure by confiscating the documents. The last element, the interests of justice, does not favor Compass/Universal. Production of the billing statements intrudes very little, if at all, on the attorney-client privilege and some of the documents do help outline the role of counsel in connection with the acquisition of Beavers' company. This, taken together with the way the disclosure came about, leads the Court to conclude a waiver by disclosure has been made with respect to the billing statements.

The equation is not quite the same with respect to the attorney-client letters and memoranda in the *in camera* documents. The interests of justice are not served by the disclosure of the letters and memoranda. None of these appear to have any relevance[2] to the subject matter of this action, and they are clearly attorney-client communications entitled to the privilege. While the file folders were clearly marked with attorney/firm names, they were in "payable" files where substantive information would not normally be found. The Court is less inclined to let a brief glance in the course of an on-sight document production suffice as a waiver in the case of clearly privileged communications comingled with billing records than it is with the billing statements alone.

██ Accordingly, the attorney billing statements and evidence of payment of attorney fees disclosed at the May 1, 1997, document production shall be produced by Compass/Universal. The following documents presented for *in camera* inspection shall be produced or may be withheld as indicated:

---

2. Relevance has not been raised as a separate ground in resistance to the motion, but to the extent pertinent the Court has considered it in assessing the *Gray* factors.

(1) In the file folder marked "Gerald Grask—Attorney," the following documents may be withheld from disclosure as privileged and the remainder shall be produced:

(a) "Snap–A–Gram" dated May 2, 1997 from Grask to Wright concerning w. c. claims;

(b) Typewritten letter dated April 15, 1997 from Grask to Wright concerning various matters;

(c) Handwritten letter dated April 2, 1997 from Wright to Grask;

(d) Handwritten notes on yellow paper written March 14, 1997 which appear to concern various matters being handled by Mr. Grask;

(e) Typewritten letter dated April 16, 1997 from Grask to Wright concerning Heritage Mutual Insurance Company matter;

(f) "Snap–A–Gram" dated April 24, 1997 from Wright to Grask concerning answers to interrogatories;

(g) April 25, 1997 memo apparently from Wright to Grask concerning *Zieser v. Universal Express* matter;

(h) "Snap–A–Gram" dated May 15, 1997 from Wright to Grask concerning Pirelli claim;

(i) "Snap–A–Gram" dated May 15, 1997 from Wright to Lee Hook.

(2) In the file folder marked, "Carney, Williams, Blackburn, Grask & Appleby 95" all documents shall be produced except the following:

(a) September 20, 1995 letter from Maharry to Curry concerning overweight citation.

(3) All material in the following file folders shall be produced:

(a) "Adams & Howe, P.C.;"

(b) "Gerald H. Grask–Box 42;"

(c) "Carney, Williams, Blackburn, Grask & Appleby—Box 40 [or 48—unclear]"

(d) "Carney, Hudson, Williams, Blackburn & Grask" (file folder marked in pencil);

(e) "Naman, Howell, Smith & Lee 95"; and

(f) "Adams & Howe, P.C.—95"

(4) In addition, the six–page photo copy document with the tab note stating, "Joe Saluri wanted these but Joe G said no—5–1–97" shall be produced.

Notwithstanding the foregoing, Compass/Universal may withhold from production, including billing statements, documents which refer or relate to any attorney services in connection with the claims and defenses brought in this action. The documents produced under this order shall be produced within **twenty (20) days** of the date hereof. Counsel for Compass/Universal may retrieve the original documents from my office for the purposes of production.

Motion to compel is granted in part and denied in part as above. In view of the nature of the controversy, the Court exercises its discretion under Fed.R.Civ.P. 37(a)(4)(C) to decline an award of fees and expenses to any party in connection with the determination of the motion.

IT IS SO ORDERED.