**UNION COUNTY, IOWA, Plaintiff,**

v.

**PIPER JAFFRAY & CO., INC., Defendant.**

**No. 4:06–cv–374.**

United States District Court, S.D. Iowa, Central Division.

March 3, 2008.

Kimberly Holst Blankenship, Timothy J. Hill, Bradley & Riley, Cedar Rapids, IA, for Plaintiff.

Terri L. Combs, Michael A. Giudicessi, Jesse Linebaugh, Faegre & Benson LLP, Des Moines, IA, for Defendant.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is Union County, Iowa's ("Union County") Objection to Chief Magistrate Judge Shields' December 26, 2007 Order. Clerk's No. 40. The Court treats the document as an appeal of the Order (Clerk's No. 37), wherein Union County was ordered to disclose as discovery numerous documents that it claims are protected by attorney-client privilege. Defendant Piper Jaffray & Co., Inc. ("Piper" or "Defendant") filed a resistance to Union County's appeal on January 24, 2008 (Clerk's No. 44), and Union County replied on February 5, 2008. Clerk's No. 48. A hearing was held on February 19, 2008. The matter is fully submitted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 2006, Union County filed a lawsuit against Defendant in the Iowa District Court in and for Polk County, Iowa. Defendant removed the action to federal court on August 3, 2006, alleging diversity of jurisdiction pursuant to 28 U.S.C. § 1332. Clerk's No. 1. In its Amended Complaint,[1] Union County alleges that it began working with Defendant in December 1996 in relation to a 900–ton per day soybean crushing plant, which was to be built and operated in Union County, Iowa. The construction of the plant was to be undertaken by CF Processing, a wholly owned subsidiary of Crestland Cooperative. Union County asserts that Defendant acted as its financial advisor in Union County's issuance of $4.325 million in General Obligation Capital Loan Notes in 1997, and $1.540 million in General Obligation Capital Loan Notes in 1998 ("the bond offerings"). Pursuant to the agreements between Union County, Crestland, and CF Processing, it was intended that tax revenues generated on property tax assessments on the plant were to cover debt service on the notes issued by Union County. CF Processing was to pay any shortfall that might arise on the debt service payments. Crestland, in turn, guaranteed CF Processing's performance.

CF Processing and Crestland filed for bankruptcy in 2001, defaulting on all obligations to Union County under the terms of the parties' agreements. Union County now asserts claims of breach of fiduciary duty, breach of contract, negligent misrepresentation, negligence, and fraud against Piper, on the basis that Piper failed to disclose material information and risks to Union County in relation to the bond offerings, and in failing to properly advise Union County about alternate financing options.

On August 27, 2007, Piper filed a Motion to Compel (Clerk's No. 25), asserting that Union County was refusing to provide documents and/or information concerning the professional advice it received in connection with the bond offerings in 1997 and 1998. Union County resisted Defendant's Motion (Clerk's No. 26), arguing that the documents sought were not discoverable because they are protected by attorney-client privilege. Defendant replied (Clerk's No. 28), arguing that Union County impliedly waived its attorney-client privilege with regard to the documents in question by filing the present lawsuit, and asserting that Iowa's Open Records Act mandates the disclosure of the contested documents. Chief Magistrate Judge Shields held

---

1. Union County filed an Amended Complaint on January 30, 2008, asserting the same factual basis and claims as in the original Petition filed in state court, but omitting Timothy Oswald, a Piper employee, as a named Defendant. *Compare* Clerk's No. 47 (Amended Complaint) *with* Clerk's No. 1.1 (Petition).

a hearing on the Motion to Compel on November 1, 2007 (Clerk's No. 33), and on November 8, 2007, ordered Union County to submit the disputed documents to the Court for in camera review. Clerk's No. 35.

In ruling on the Motion to Compel, Chief Magistrate Judge Shields ordered several of the contested documents disclosed, finding that Union County had effectively waived the attorney-client privilege by bringing the present action:

> In this case, there is no question that the law firm of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C. and the law firm of Willson & Pechacek, P.L.C., as well as the Union County Attorney, established attorney-client relationships with the County regarding the issuances of the bonds in question. And, there is no question that County does not wish communications that it had with those lawyers to be disclosed. However, after reviewing the documents in question, the Court believes that there has effectively been a waiver of the attorney-client privilege when County filed suit against Piper. The entire basis of the suit against Piper is the work performed by that brokerage firm in conjunction with the County and the law firms, as well as CF Processing and Crestland, to have the mill built, and the County to issue bonds to finance the project. A review of these documents, with some exceptions, indicates to the undersigned magistrate judge that Piper should not be limited in pursuing discovery regarding the underlying allegations raise by County.
>
> The Court finds that County has timely asserted the attorney-client privilege. Yet, even though the privilege may have been timely asserted, it came in the shadow of the litigation that County filed against Piper, and thus the waiver takes precedence at this point. Whether any of these documents will be admissible at trial is irrelevant to the considerations now before the court. The undersigned magistrate is further satisfied that the documents in question are designed reasonably to lead to the discovery of admissible evidence, given the likely course of discovery in this case, and the claims alleged by County.

Clerk's No. 37 at 7.[2]

## II. STANDARD OF REVIEW

There are two standards for a district court's review of the order of a magistrate judge. A nondispositive order may only be reversed if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(a); Fed. R.Civ.P. 72(a). Conversely, if the order concerns a dispositive motion, the district court must review the magistrate judge's decision de novo and "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed. R.Civ.P. 72(a). Because the present matter deals with a nondispositive matter, the Chief Magistrate Judge's order is subject to a "clearly erroneous or contrary to law" standard of review.

## III. LAW AND ANALYSIS

### A. *Implied Waiver of Attorney–Client Privilege*

 Union County contends that the Chief Magistrate Judge's finding that Union County impliedly waived the attorney-client privilege by bringing the present lawsuit is clearly erroneous and contrary to law. As pointed out in Chief Magistrate Judge Shields' order, because the present action arises under diversity jurisdiction, disputes regarding attorney-client privilege are resolved by applying state law. *See* Clerk's No. 37 (citing *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 627 (N.D.Iowa 2000)); *see also Baker v. General Motors*, 209 F.3d 1051, 1053 (8th Cir. 2000) ("In this diversity case, we apply federal law to resolve work-product claims and

---

2. In its resistance to the Motion to Compel, Union County also initially argued that the contested documents were protected by the work-product privilege. Chief Magistrate Judge Shields found, however, that "[n]one of the documents which the Court orders produced by County, and to which it has asserted an attorney work-product privilege, fall within that protective category...." Clerk's No. 37 at 6. Union County does not object to Chief Magistrate Judge Shields' ruling in this regard.

state law to resolve attorney-client privilege claims."). Under Iowa law, " '[a]ny confidential communication between an attorney and the attorney's client is absolutely privileged from disclosure against the will of the client.' " *Squealer Feeds v. Pickering*, 530 N.W.2d 678, 684 (Iowa 1995) (abrogated on other grounds) (quoting *Shook v. City of Davenport*, 497 N.W.2d 883, 886 (Iowa 1993)). The attorney-client privilege may be waived, however, either expressly or impliedly. *Id.* "An express waiver occurs when a client voluntarily discloses the content of privileged communications." *Id.* (citing *Miller v. Continental Ins. Co.*, 392 N.W.2d 500, 504 (Iowa 1986)). " '[A]n implied waiver occurs where the [client] has placed in issue a communication which goes to the heart of the claim in controversy.' " *Id.* (quoting 81 Am. Jur.2d, *Witnesses* § 348, at 323 (1992)). Moreover, a waiver may be implied by "conduct making it unfair for a client to invoke the privilege." *Brandon v. W. Bend Mut. Ins. Co.*, 681 N.W.2d 633, 642 (Iowa 2004).

Here, Piper argues that, by filing the present suit against it, Union County has "placed in issue the advice it allegedly did or did not receive regarding the financial risk the notes and bonds presented and the tax effect of certain aspects of the Crestland transactions." Piper's Resistance Br. at 3. That is, by alleging that Piper failed to properly advise and counsel Union County on various aspects of the financing deal, Union County "also placed in issue the reasonableness of any reliance it made on Piper Jaffray's purported advice and whether there w[ere] intervening or superseding causes, such as tax or legal advice [Union County] received from others." *Id.* Union County, on the other hand, counters that, by filing the present lawsuit, it has only placed at issue "the advice given to it by Piper in connection with the Note issuances, not that provided by Ahlers, Willson or other County officials or representatives." Union County's Objections Br. at 13. More specifically, Union County

contends that Piper agreed to act as "financial consultant" (a role which Piper disputes it undertook) to Union County, thus undertaking various fiduciary obligations. According to Union County, both the Ahlers and Willson law firms acted in very limited advisory capacities which in no way obligated them to advise Union County on the financial soundness of bond issuances.

Piper urges the Court to adopt the test used in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975), in determining whether Union County's filing of the present lawsuit amounts to an implied waiver of the attorney-client privilege. The *Hearn* test provides that an implied waiver occurs when:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

68 F.R.D. at 581. The *Hearn* test has been described by one court as being applicable "even if the privilege holder does not attempt to make use of a privileged communication," that is, an implied waiver will be found if the privilege holder asserts a position, "the truth of which can only be assessed by examination of the privileged communication." *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y.1996). Union County, on the other hand, argues that the *Hearn* test is disfavored, and that the Court should adopt the Third Circuit's *Rhone–Poulenc* test, commonly referred to as the anticipatory waiver test, which rejects relevance as a pertinent factor for determining whether or not evidence should remain protected by the attorney-client privilege in a particular situation.[3] *See Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3rd Cir.1994). The

---

**3.** The Tenth Circuit Court of Appeals has stated that there are actually three tests, with the least restrictive being the "automatic waiver" rule, which provides "that a litigant automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privi-

leged material is relevant." *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir.1998). The *Frontier* court characterized the remaining two tests, i.e., the *Hearn* test and the *Rhone–Poulenc* test, as intermediate and restrictive tests, respectively. *Id.*

*Rhone–Poulenc* court criticized the *Hearn* test, finding it to be of "dubious validity":

> While the [*Hearn* and *Byers v. Burleson,* 100 F.R.D. 436 (D.D.C.1983)] opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed. Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.
>
> As the attorney client privilege is intended to assure a client that he or she can consult with counsel in confidence, finding that confidentiality may be waived depending on the relevance of the communication completely undermines the interest to be served. Clients will face the greatest risk of disclosure for what may be the most important matters. Furthermore, because the definition of what may be relevant and discoverable from those consultations may depend on the facts and circumstances of as yet unfiled litigation, the client will have no sense of whether the communication may be relevant to some future issue, and will have no sense of certainty or assurance that the communication will remain confidential.
>
> A party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action. While the attorney's advice may be relevant to the matters in issue, the privilege applies as the interests it is intended to protect are still served by confidentiality.

*Id.* at 864. Thus, the *Rhone–Poulenc* court found that an attorney's advice is placed in issue only where "the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." [4] *Id.* at 863.

There is a clear split of authority over whether the *Hearn* or the *Rhone–Poulenc* test is appropriate when considering questions of implied waivers, though the *Hearn* approach has been characterized as the "majority view." *See, e.g., Pub. Serv. Co. of N.M. v. Lyons,* 129 N.M. 487, 10 P.3d 166, 172 (2000) (characterizing *Hearn* as the majority approach, *Rhone–Poulenc* as the minority position, and collecting cases). Despite the fact that no court in the Eighth Circuit has directly addressed the split, Union County asserts that "recent courts sitting in the Eighth Circuit have chosen to follow *Rhone–Poulenc* as guiding authority." Reply at 2. Union County cites *GP Industries, LLC v. Eran Industries, Inc.,* Nos. 8:06cv50 & 8:06cv51, 2006 WL 3290306, at *2 (D.Neb. Nov. 13, 2006) and *Kobluk v. University of Minnesota,* 574 N.W.2d 436, 443 (Minn. Jan.28, 1998). In *GP Industries,* the district court cited *Rhone–Poulenc* for the proposition that the attorney-client privilege can be waived if a party raises an " 'advice of counsel' defense or otherwise places in issue its reliance upon counsel's advice." *GP Indus.,* 2006 WL 3290306, at *2. The court did not, however, undertake any particular analysis that would lead to a conclusion that it was adopting the *Rhone–Poulenc* test over the *Hearn* test. Indeed, no mention at all was made of *Hearn,* there was no further mention or discussion of *Rhone–Poulenc* beyond that articulated, and the ultimate issue in the case was whether any evidence existed in the record to support the notion that the defendant was raising an "advice of counsel" defense, such that a waiver of attorney-client privilege would necessarily be implied. In *Kobluk,* the Minnesota Supreme Court did not adopt *Rhone–Poulenc,* but rather cited the case in a string cite in support of the proposition that communications are protected by attorney-client privilege, but that facts communicated within such communications are not privileged. *Kobluk,* 574 N.W.2d at

---

**4.** In a case subsequent to *Rhone–Poulenc,* the Third Circuit stated: "[O]ur holding in [*Rhone–Poulenc*]—that a party does not lose the privilege to protect attorney-client communications from disclosure in discovery when his or her state of mind is placed at issue—was premised upon the unique facts of that case." *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 486 (3d Cir.1995). Despite this seeming attempt to limit *Rhone–Poulenc* to the facts of that case, the Third Circuit, as well as other courts, have continued to apply the test without restriction.

443–44. Contrary to Union County's assertion as to which test has the most influence in the Eighth Circuit, it appears that only one court has explicitly adopted either of the two competing tests. *See Medtronic, Inc. v. Intermedics, Inc.*, 162 F.R.D. 133, 134–35 (D.Minn.1995) (employing the *Hearn* test).[5]

■ Having considered the merits and criticisms of both the *Hearn*[6] and the *Rhone–Poulenc*[7] tests, the Court finds neither to be entirely sufficient, but concludes that the *Hearn* test, despite its detractions, presents the fairest and most reasonable approach. While the Court recognizes and validates the importance of the attorney-client relationship, the *Rhone–Poulenc* test draws a bright-line rule that leaves no room for or consideration of fairness or equity, thus potentially facilitating abuse of the privilege it seeks to protect. The *Hearn* test, on the other hand, recognizes the importance of the attorney-client relationship, but permits a balancing of that interest against the interests of fundamental fairness. While critics of the *Hearn* approach argue that it is, for all practical purposes, a slippery slope, over three decades of case law make clear that such concerns are without substantial foundation. The reasonableness of the *Hearn* approach is particularly evident where, as here, a defendant has no alternative means of defending a claim brought by the party asserting the privilege.

■ Turning, then, to whether the *Hearn* test warrants a finding that Union County has impliedly waived its attorney-client privilege, the Court finds that the first *Hearn* element has been satisfied. That is, Union County's assertion of attorney-client privilege was the result of Union County filing the present lawsuit against Piper. Likewise, the Court finds that the second *Hearn* element has been satisfied, i.e., that by filing the present suit alleging that Piper breached its fiduciary duty to Union County, breached its contract with Union County, and that Piper is liable for negligent misrepresentation, negligence and fraud, Union County has put the allegedly protected information at issue by making it highly relevant to the case. Specifically, the Court notes that several of Union County's claims will require it to demonstrate that it reasonably relied on Piper's advice in undertaking the financial structuring that has culminated in the present case. While Union County maintains that Piper was its financial consultant, a fact that Piper

**5.** In *Burress v. Union Pacific R.R. Co.*, No. 1:01cv00072, 2007 WL 60935, at *1 (E.D.Ark. Jan. 8, 2007), the court cited *Rhone–Poulenc* for the proposition that "a party must affirmatively raise ... factual or legal issues that involve privileged communications," and for the proposition that a "protected communication is not placed in issue just because it is relevant." 2007 WL 60935, at * 1. The *Burress* court did not wholeheartedly adopt *Rhone–Poulenc*, however, noting that the attorney-client privilege may be waived "when a party asserts a claim that, in all fairness, requires examination of each party's protected communications." *Id.* (citing *United States v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981)).

**6.** The criticisms of the *Hearn* test are highlighted in the quoted passage from *Rhone–Poulenc, supra*, but were also summed up well in an April 1998 article in Defense Counsel Journal, which characterized the major criticisms of the *Hearn* test as follows: (1) it places too great an emphasis on the opposing party's need for the privileged information, which is inappropriate for a privilege that may only be waived by its holder; (2) the fact that the test is a balancing one means that it fails to ensure predictability or certainty, and given that the attorney-client privilege is universal, judges "should not impose their own sense of equities"; and (3) the test defies limitations, as evidenced by a few decisions that have extended *Hearn* beyond its original scope. T. Maxfield Bahner & Michael L. Gallion, *Waiver of Attorney–Client Privilege via Issue Injection: A Call for Uniformity*, 65 Def. Couns. J. 199, 203 (April 1998). On the positive side, the article claims that critics have placed too much emphasis on aberrations, the test is not uncontrollable, and the decades of case law on the doctrine have dramatically enhanced the predictability the test offers. *Id.*

**7.** The criticisms of the *Rhone–Poulenc* test were summarized in the same Defense Counsel Journal article referenced in footnote 6:

While at first glance the anticipatory waiver doctrine seems attractive, its application proves troublesome. First, the test rests on the faulty assumption that a party's intention to rely on advice of counsel is clearly revealed by the face of a party's claim or defense. Second, by requiring that clients must directly inject the advice of counsel into issue, the test overlooks claims involving indirect reliance. As such, this test's rigid approach can actually facilitate abuse of the privilege.

Bahner & Gallion, 65 Def. Couns. J. at 205.

disputes, and that Ahlers and Willson did not provide any such services, it is entirely reasonable for Piper to question whether those law firms may have given Union County advice on the propriety of the financial arrangements it was about to undertake. In short, by bringing the present lawsuit and by alleging claims of misrepresentation and fraud, Union County has placed in issue the reasonableness of its reliance on Piper's advice or lack thereof. With regard to the third *Hearn* element, whether application of the privilege would deny Piper access to information vital to its defense, the Court finds the element satisfied. At this stage of the proceedings, it is too early to tell for certain if the information sought to be disclosed is vital to the defense, though it is clear that the restricted discovery approved by Chief Magistrate Judge Shields is likely to lead to the discovery of admissible evidence. Indeed, if either firm did provide advice, a scenario which is entirely reasonable given the close relationship between Union County, Piper, Ahlers, and Willson in regard to the transactions at issue, it would likely prove vital to Piper's defense against Union County's claims on the elements.

With regard to the third element, a look at the *Hearn* case is instructive. In *Hearn*, a prison inmate claimed, pursuant to 42 U.S.C. § 1983, that his confinement in the mental health unit of the Washington State Penitentiary violated his constitutional rights under the due process clause and the Eighth Amendment. *Hearn*, 68 F.R.D. at 580–81. The defendant officials raised the affirmative defense of qualified immunity, claiming they believed in good faith that their conduct was legal. *Id.* Plaintiff sought discovery of legal advice given by the state attorney general relating to his confinement. *Id.* The *Hearn* court found that the defendants' assertion of qualified immunity placed communications with defendants' attorneys directly in issue. *Id.* The court further found that plaintiff's need for the information outweighed the policy behind the attorney-client privilege. *Id.* Noting that "one result of asserting the [attorney-client] privilege has been to deprive plaintiff of information necessary to 'defend' against defendants' affirmative defense, for the protected information is also germane to

plaintiff's burden of providing malice or unreasonable disregard of his clearly established," the *Hearn* court stated:

> [T]he content of defendant's communications with their attorney is inextricably merged with the elements of plaintiff's case and defendants' affirmative defense. These communications are not incidental to the case; they inhere in the controversy itself, and to deny access to them would preclude the court from a fair and just determination of the issues. To allow assertion of the privilege in this manner would pervert its essential purpose and transform it into a potential tool for concealment of unconstitutional conduct behind a veil of confidentiality. Under these circumstances, the benefit to be gained from disclosure far outweighs the resulting injury to the attorney-client relationship. The privilege should not apply.

*Id.* at 582. As in *Hearn*, permitting Union County to assert the attorney-client privilege deprives Piper of information necessary to fairly defend against Union County's claim. Indeed, at the very core of Union County's allegations is the assertion that it relied on Piper's advice to its detriment, an allegation the truth of which may only be assessed by examination of privileged communications. *See Blue Lake Forest Prods., Inc. v. United States*, 75 Fed.Cl. 779, 783–84 (2007); *Pereira v. United Jersey Bank*, No. 94 Civ. 1565, 1997 WL 773716, at *4 (S.D.N.Y. Dec. 11, 1997) ("[I]mplied waiver under *Hearn* will lie where a party asserts a position the truth of which can only be assessed by examination of the privileged communication").

The Court's conclusion that implied waiver is present in this case is supported by case law, including that urged by Union County in objection to the Chief Magistrate Judge's ruling. In *Sedco Int'l v. Cory*, 683 F.2d 1201 (8th Cir.1982), for example, Sedco appealed a finding that it was liable to Roy Carver for fraudulent misrepresentations, which Carver alleged induced him to enter into a venture to produce oil in an area in the Persian Gulf. *Sedco*, 683 F.2d at 1203. Sedco sought to examine Carver concerning advice he received from his attorneys, but the district court denied the request. *Id.* at

1204. Sedco argued on appeal that the district court's ruling prevented it "from discovering whether Carver actually relied on Sedco employees' statements and, if he did, whether Carver's reliance was justifiable." *Id.* In determining whether Carver impliedly waived the attorney-client privilege by asserting fraud, the Court of Appeals held that two elements must be examined: "(1) implied intention and (2) fairness and consistency." *Id.* at 1206. With regard to Sedco's claim that Carver did not rely on its employees' representations, the court found that, "by asserting fraud, Carver, at most, waived his right to assert the privilege to prevent disclosure of communications which might have proven he did not rely on Sedco's employees' statements or that such reliance was unreasonable." *Id.* The court, however, found Sedco's assertion to be without merit because it could not "imagine what Carver's attorneys could have told him, without first acquiring factual information from other sources, which might demonstrate that Carver acted for reasons unrelated to Sedco employees' representations." *Id.* at 1207. The court, likewise, rejected Sedco's contention that Carver's reliance may have been proven unreasonable had the attorney-client communications been disclosed. *Id.* Specifically, the court found that only certain types of advice could have made Carver's reliance unreasonable, and Sedco had failed to demonstrate how receipt of "ordinary legal advice" could have made his reliance unreasonable. *Id.*

In a situation factually similar to the present one, *Sedco* specifically recognized the possibility that, by asserting fraud in a complaint, a party may waive the attorney-client privilege to the extent that disclosure of attorney-client communications might prove a lack of reliance or the unreasonableness of any actual reliance. While the *Sedco* court ultimately affirmed the district court's determination that no implied waiver was present, the *Sedco* case was at a completely different stage (circuit appeal) in the proceedings, and was subject to a different standard of review (abuse of discretion) than is the present case. Furthermore, the legal advice at issue in *Sedco* was "ordinary legal advice," whereas, in the present case, the legal advice at issue is that provided by a bond counsel firm and a tax attorney, in relation to the very transaction in which Piper is alleged to have provided incomplete or faulty advice. The distinction between the two cases is clear, and fairness mandates that Piper be permitted to present an informed defense to Union County's claims, particularly where, as here, three separate entities, each of which is an expert in some aspect of the transaction at issue, were advising Union County on the same underlying financial arrangements. Indeed, the Court of Appeals recognized in *Sedco* that a primary consideration in determining whether an implied waiver has occurred is fairness, the precise basis on which this Court has founded its decision to follow the *Hearn* test. *Id.* at 1206 (pointing out that "fairness and consistency" must be evaluated in determining whether there is an implied waiver, and quoting Dean Wigmore for the proposition that a "waiver is to be predicated ... when the conduct ... places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege" (quoting 8 J. Wigmore, *Evidence*, § 2388, at 855)).

In another case proffered by Union County, Compass/Universal brought a claim against Joseph Beavers and his trucking company, P.E.J., for fraudulent misrepresentation in connection with the purchase of P.E.J.'s assets. *Beavers v. Hobbs*, 176 F.R.D. 562, 563 (S.D.Iowa 1997). Beavers requested various documents during discovery, but Compass/Universal withheld several items on the basis of attorney-client privilege. *Id.* Beavers argued that Compass/Universal had impliedly waived the privilege as a result of its allegation of fraud concerning the asset sale. *Id.* at 564. Noting that "the mere claim of fraud by a party to a transaction in which he was represented by counsel is not a wholesale waiver of the attorney-client privilege," the court nonetheless found that a claim of fraud "may open the door to an implied waiver 'to assert the privilege to prevent disclosure of communications which might have proven [the client] did not rely' on the misrepresentations or that reliance was unreasonable." *Id.* (quoting *Sedco*, 683

F.2d at 1206). The *Beavers* court declined to find an implied waiver on the record in that case, however, concluding that "the issue can only be determined by examining specific attorney-client communications in light of the fraud claims," and noting that "[t]his case is several steps short of that" as there were no "identified communication[s]." *Id.* In the present case, however, Chief Magistrate Judge Shields carefully reviewed the communications at issue and determined, given the factual and procedural posture of the case, that such communications would likely be relevant to, and calculated to lead to admissible evidence, regarding the reliance elements of Union County's fraud and misrepresentation claims. In fact, Chief Magistrate Judge Shields appears to have given significant weight to the importance of the attorney-client privilege in his ruling, as he found that some of the documents claimed to be subject to the privilege were discoverable, while others were not.

Having reviewed the arguments of the parties, and the evidence now before it, the Court concludes that the Chief Magistrate Judge's order is not clearly erroneous or contrary to law. Accordingly, Union County's objections are overruled and Chief Magistrate Judge Shields' order, dated December 26, 2007, is affirmed.

### B. *Iowa Open Records Act*

Piper argued before Chief Magistrate Judge Shields that the Iowa Open Records Act provides an alternate basis on which Union County must disclose the records that it has asserted are protected by the attorney-client privilege. Chief Magistrate Judge Shields did not, however, rely on the Iowa Open Records Act in ruling, focusing instead on whether Union County had impliedly waived the attorney-client privilege by filing the present action. Given that the Court has affirmed Chief Magistrate Judge Shields' ruling in that regard, it declines to further address the applicability of the Iowa Open Records Act to the present situation.

### IV. CONCLUSION

For the reasons stated herein, Union County's Objections to Chief Magistrate Judge Shields' December 26, 2007 Order (Clerk's No. 40) are overruled. Given, however, the lack of Eighth Circuit precedent regarding this issue, the Court finds that the present issue "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Accordingly, the Court hereby certifies the case for an immediate interlocutory appeal. The interlocutory appeal shall only stay the present proceedings with regard to Union County's obligation to comply with the Chief Magistrate Judge's order regarding disclosure of documents claimed be protected by the attorney-client privilege.

IT IS SO ORDERED.