[Cite as *Dejak v. Dejak*, 2019-Ohio-3236.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| MARIA DEJAK, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-139** |
| JOHN F. DEJAK, | : | |
| Defendant-Appellant. | : | |

Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 2016 DR 000533.

Judgment: Affirmed.

*David J. Sternberg,* Sternberg & Zeid Co., L.P.A., 7547 Mentor Avenue, #301, Mentor, OH 44060 (For Plaintiff-Appellee).

*Adam J. Thurman* and *Alexis M. Gacey,* Rosenthal Thurman, LLC, 1001 Lakeside Avenue, North Point Tower, Suite 1720, Cleveland, OH 44114 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, John F. Dejak, appeals from the final judgment of divorce, entered by the Lake County Court of Common Pleas, Domestic Relations Division. We affirm.

{¶2} Appellant and appellee, Maria Dejak, were married on July 12, 2013. Prior to the marriage, the parties executed a prenuptial agreement. Appellant requested the agreement and his attorney drafted the same. Both parties signed the agreement,

which was notarized and also signed by both parties' counsel. On September 1, 2016, appellee filed her complaint for divorce, claiming gross neglect, extreme cruelty, adultery, and incompatibility. Appellant filed his answer and counterclaim for divorce, alleging gross neglect, extreme cruelty, and incompatibility. Appellee was represented by counsel from the inception of the case through its completion; appellant, alternatively, was initially represented by counsel, but counsel withdrew prior to a hearing on the enforceability of the prenuptial agreement. The magistrate continued the hearing and set a pretrial for June 21, 2017 to allow appellant to obtain new counsel. The magistrate issued a subsequent order stating the enforceability hearing would proceed on September 15, 2017; the order also advised the parties that if appellant retained counsel prior to that date, the hearing would be continued to afford counsel an opportunity to prepare. Appellant did not obtain counsel and, instead, proceeded pro se during the enforceability hearing.

{¶3} At the close of the hearing, the magistrate addressed the parties and, in particular, appellant, who was proceeding pro se. The magistrate stated: "So what I have to do is make a written decision explaining how I reach whatever conclusion I reach. As I mentioned, with these types of cases, this decision is something that becomes part of a later decision. *So it's not something which I believe is subject to being objected to until the divorce is granted.*" (Emphasis added.)

{¶4} On October 25, 2017, the magistrate issued his decision and concluded the prenuptial agreement was enforceable. In particular, the magistrate determined the agreement was entered into freely and voluntarily, without fraud, duress, coercion or overreaching; the magistrate observed there was full disclosure and full knowledge of

the property at issue and the agreement did not promote or encourage divorce. The magistrate further determined that this ruling would be incorporated into the final judgment of divorce; the magistrate noted, however, that merely because the agreement was enforceable did not imply all issues of interpretation of the agreement were resolved. As such, the magistrate determined any additional issues relating to the meaning of the agreement would be addressed at the final hearing on divorce.

{¶5} Notwithstanding the magistrate's statement at the end of the hearing regarding his "belief" that no objections need to be filed, his decision concluded with the following accurate advisement: "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Appellant failed to file timely objections to the magistrate's decision and the trial court adopted the same on November 20, 2017.

{¶6} The matter proceeded to a final hearing on February 28, 2018. Both parties were represented by counsel. On March 14, 2018, the magistrate issued his decision concluding, in light of the prenuptial agreement, appellee was entitled to 20% of appellant's assets as set forth in the agreement. And the magistrate determined appellee was entitled to divorce upon grounds of incompatibility. The magistrate's decision again included the Civ.R. 53 advisement.

{¶7} On March 28, 2018, appellant filed objections with a motion for leave to supplement the objections upon filing of the transcript of proceedings. In his objections, appellant alleged the magistrate erred when it validated the prenuptial agreement in his

3

October 2017 decision. He further alleged the magistrate erred by considering the testimony of appellant's former counsel relating to the circumstances surrounding the entry of the agreement in the October 2017 decision. Appellant also objected to the magistrate's determination regarding the date of the end of the marriage, the magistrate's award of 20% of his assets to appellee, and the magistrate's alleged failure to obtain a complete disclosure of all marital property. On May 30, 2018, appellant supplemented his objections in which he elaborated more fully on his initial objections. He also added an objection to the magistrate's determination that the marriage should be terminated for incompatibility. Appellee subsequently filed a response to appellant's preliminary and supplemental objections.

{¶8} On October 16, 2018, the trial court issued its judgment entry adopting the magistrate's decision. Regarding appellant's objections, the trial court determined the issue of the magistrate's validation of the prenuptial agreement was waived for failure to file timely objections to the same. With respect to appellant's objection to his former attorney's testimony, the court determined the attorney-client privilege does not apply where an attorney is testifying in his or her capacity as a witness to the circumstances of the signing and execution of a document. The trial court also determined the magistrate did not err in concluding the marriage should be terminated based upon incompatibility; it found the magistrate's decision relating to the end-date of the marriage, i.e., the date of appellee's filing for divorce, was equitable; and, it determined there was no evidence of additional marital property save that listed in the prenuptial agreement. In short, the trial court adopted the magistrate's decision in full.

{¶9} On November 5, 2018, the trial court adopted the foregoing conclusions into its final judgment of divorce. This appeal ensued. Appellant assigns four errors for our review. His first asserts:

{¶10} "The trial court erred and abused its discretion in validating the prenuptial agreement."

{¶11} Appellant identifies three sub-issues under this assignment of error: First, he argues the terms of the agreement are ambiguous, and therefore the trial court erred in awarding appellee 20% of the assets identified in the agreement. Second, he asserts the trial court erred in adopting the magistrate's conclusion that the agreement was entered into voluntarily and was not a result of appellee's overreaching. Finally, he contends the trial court erred in adopting the magistrate's decision finding the terms of the agreement did not promote or encourage divorce or profiteering by divorce.

{¶12} With respect to the second and third issues, appellant did not file timely objections to the October 25, 2017 magistrate's decision which found the agreement enforceable and specifically addressed these points. Ordinarily, the failure to file timely objections to an alleged error in a magistrate's decision functions to waive the issue for appeal save plain error. *See, e.g.,* Civ.R. 53(D)(3)(b)(iv).

{¶13} Appellant, however, in his reply brief, claims the objections he filed vis-à-vis the October 2017 decision were timely because the October decision, concluding, inter alia, the prenuptial agreement was enforceable, was interlocutory. In light of this, appellant claims he was entitled to wait and file his objections to that decision until the magistrate issued his decision following the final hearing on divorce. In short, appellant maintains "[w]hen a Magistrate's decision is not a final appealable order, a party may

5

raise their objections to the interlocutory decision by objecting to the final decision that disposes of the case." We do not agree.

**{¶14}** First, a magistrate's decision is never final and appealable. A magistrate's decision is only effective once adopted by a trial court and, as a result, only a trial court's judgment can be final and appealable. Here, while the judgment adopting the magistrate's decision on the enforceability of the agreement was not final and appealable (because other issues in the underlying divorce proceeding still required final resolution), this does not imply appellant was freed from his obligation to timely object to the magistrate's decision pursuant to Civ.R. 53(D)(3)(b)(i).

**{¶15}** Civ.R. 53(D)(3)(b)(i) provides that a party wishing to object to the magistrate's decision must file written objections within 14 days of the *filing* of the magistrate's decision. We acknowledge that a court may consider untimely objections but only "*so long as the trial court has not entered a final judgment.*" (Emphasis sic.) *Learning Tree Academy, Ltd. v. Holeyfield,* 12th Dist. Butler No. CA2013-10-194, 2014-Ohio-2006, ¶15, fn. 2; *see also Thompson v. Thompson*, 2d Dist. Montgomery No. 27394, 2017-Ohio-8192, ¶9. Here, the court could have considered appellant's untimely objections because the October 2017 decision was interlocutory. The trial court, however, did not elect to reconsider its previous judgment adopting the October 2017 decision. The trial court did not err in declining to revisit the issue of enforceability. In short, when a matter is committed to a magistrate and the magistrate issues a decision, the parties are required to file timely objections or risk waiving all challenges save plain error.

{¶16} This case is unusual, however. Here, the magistrate provided appellant, a pro se litigant, with inaccurate information regarding the necessity of objecting to his October 2017 decision. Accordingly, in the interest of justice we shall proceed to address appellant's arguments.

{¶17} In this case, the magistrate applied the correct legal standard in evaluating the enforceability of the agreement. In *Gross v. Gross*, 11 Ohio St.3d 99 (1984), the Supreme Court of Ohio set forth the following standard for evaluating the validity and enforceability of a prenuptial agreement. The Court held such an agreement is valid and enforceable: "(1) if [the parties] have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce." *Id.* at paragraph two of the syllabus.

{¶18} The magistrate set forth the foregoing factors and evaluated the testimony and evidence in light of these factors. Specifically, the magistrate found:

> {¶19} In this matter, the defendant was the person in the better financial position. The prenuptial agreement was created upon request of defendant, both parties had counsel, counsel for defendant indicated he believed defendant understood the agreement, defendant was an experienced business owner, and defendant acknowledges he signed the agreement even though "he didn't like it" and did not want to complain. The agreement outlines the assets and debts of the parties and neither party presented evidence contesting the list of assets or debts. Evidence was not presented that the terms of the agreement promoted or encouraged divorce or profiteering by divorce.

{¶20} Given the evidence submitted at the hearing, the magistrate's analysis, and his application of the correct legal rule, we discern no error. The trial court

7

therefore committed no error in adopting the magistrate's decision concluding the agreement was enforceable. Appellant's second and third arguments lack merit.

{¶21} Appellant's argument that the agreement is ambiguous and thus the magistrate's award of 20% of his assets to appellee was erroneous goes to the interpretation of the agreement. This was a matter that was addressed at the final hearing, where appellant was represented by counsel and to which appellant properly objected.

{¶22} The relevant provision of the prenuptial agreement to which appellant takes issue is Section 3.02(e), which provides:

{¶23} Notwithstanding Article 3.02 of this Trust Agreement, if the parties are married for over one (1) year at the time of the divorce of the parties, the wife shall receive Ten Percent (10%) of the husband's assets, excluding property of the husband in Slovenia. If they are married two (2) years or longer, the wife shall receive Five Percent (5%) of the husband's assets, excluding property of the husband in Slovenia, for each year they are married in excess of two (2) years, up to a maximum of Twenty-five Percent (25%). By way of example, if the parties divorce three and one-half (3 1/2) years after they are married, the wife shall receive Twenty Percent (20%) of the assets of the husband, excluding property of the husband in Slovenia. If the parties divorce after they are married ten (10) years, the wife shall receive Twenty-five Percent (25%) of the assets of the husband, excluding property of the husband in Slovenia.

{¶24} Appellant contends the foregoing provision is ambiguous because it is susceptible to two reasonable interpretations; one interpretation was the construction applied by the magistrate, and adopted by the trial court, i.e., because the parties were married for over three years, appellee was entitled to 20% of the assets. The alternative interpretation, which appellant advances, would only award appellee 5% because, per the language of the agreement, the parties were married for more than

8

two years and as such, she "shall receive Five Percent (5%) of the husband's assets." We maintain appellant's construction is unreasonable and thus there is no ambiguity.

{¶25} Initially, the provision at issue gives appellee a right to 10% of husband's assets if they are married for over one year. It would make virtually no sense for wife's interest in husband's assets to be reduced by half if the parties remained married in excess of two years. Reading the provision in its entirety, after being married for over one year, appellee is entitled to 10% of appellant's assets and, in every succeeding year the couple remained married, appellee's interest will increase by 5%, until her interest in appellant's assets is capped at 25%. Following the example set forth in the provision, if the parties remain married in excess of two years, appellee is entitled to 15% of husband's assets; if they remain married in excess of three years, as they actually were in this case, appellee is entitled to 20%.

{¶26} Moreover, it is worth pointing out that appellant, during the final hearing, seemed to acknowledge the foregoing construction. During a discussion with the magistrate regarding the agreement, the magistrate observed "there were negotiations probably that went back and forth and a plan was put in place where based on the length of the marriage, Miss DeJak would be entitled to up to 25 percent of your assets, maximum." Appellant replied "20, 20." The magistrate noted "[w]ell if it would have been several more years it could have been 25. I mean the maximum amount." This exchange may reflect appellant's misunderstanding of the maximum amount to which appellee would be entitled; alternatively, it could also reflect appellant's understanding of what, if the agreement was enforceable, appellee was actually entitled.

9

**{¶27}** In any event, we do not perceive an ambiguity in the provision at issue. Although, arguably, the language could have been more precise, we conclude the provision entitles appellee to 10% after the first year, and increases in 5% increments for each additional year until it reaches 25%. This would cap appellee's entitlement at year four. Because, however, the parties were married in excess of three years, but less than four years, appellee was entitled to 20% The trial court did not abuse its discretion in adopting the magistrate's decision on this point.

**{¶28}** Appellant's first assignment of error lacks merit.

**{¶29}** His second assignment of error provides:

**{¶30}** "The trial court erred and abused its discretion by considering the testimony of appellant's former counsel without an express waiver of the attorney-client privilege."

**{¶31}** The Supreme Court of Ohio has observed that the attorney-client privilege is "founded on the premise that confidences shared in the attorney-client relationship are to remain confidential." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 660 (1994). The privilege, however, is not absolute. Rather, "the mere relation of attorney and client does not raise a presumption of confidentiality of all communications made between them." *Id.* at 660-661. Instead, a determination of whether a communication made by a client to an attorney is privileged depends on the circumstances surrounding the exchange. *Lemley v. Kaiser*, 6 Ohio St.3d 258, 264 (1983), quoting *In re Jacqueline F.*, 47 N.Y.2d 215, 222 (1979). At trial, the burden of showing that certain testimony should be excluded under the attorney-client privilege is on the party seeking to exclude it. *Lemley* at 263-264. Appellant did not object to

counsel's testimony during the hearing and, as a result, did not advance a basis as to why the testimony should be excluded. On this basis alone, we discern no error.

{¶32} Regardless of the foregoing, a review of former-counsel's testimony demonstrates he was not testifying regarding any privileged communications. He was called in his capacity to testify that he, in fact, drafted the document at appellant's request and witnessed the nature and circumstances of the execution of the same. He did not specifically testify or disclose any particular conversations he had with appellant; and, former counsel objected to one question based upon attorney-client privilege. The question was subsequently withdrawn. In light of these points, we fail to see a violation of the attorney-client privilege. The magistrate did not commit error in permitting former counsel's testimony.

{¶33} Appellant's second assignment of error lacks merit.

{¶34} Appellant's third assignment of error provides:

{¶35} "The trial court erred and abused its discretion in finding the date of the filing of the complaint for divorce was the date the marriage terminated."

{¶36} Appellant argues the trial court erred in finding the date of termination of the marriage was September 1, 2016, the date appellee filed for divorce. Appellant asserts the trial court should have used the date the parties commenced living separate and apart, i.e., May 20, 2016.

{¶37} The term "during the marriage" may be defined as "the period of time from the date of the marriage through the date of the final hearing" or, if the court finds the date of the final hearing inequitable, "the court may select dates that it considers equitable in determining marital property." R.C. 3105.171(A)(2)(a) and (b). A court has

11

broad discretion in determining when a marriage is terminated. *See, e.g., Grody v. Grody*, 10th Dist. Franklin No. 07-AP-690, 2008-Ohio-4682, ¶8.

**{¶38}** The magistrate's decision, which the trial court adopted, noted that the prenuptial agreement did not define "married" or "time of divorce." The magistrate stressed that the meaning of the phrase "at the time of the divorce of the parties," used in the agreement, was a critical threshold issue. As such, the magistrate determined, in light of the evidence, "the reasonable and equitable interpretation of the intention of the parties is 'time of the divorce' is the filing of the complaint for divorce. The parties separated on or about May 30, 2016 [sic] and the divorce was filed September 1, 2016." In setting the termination date at the date of the filing, the magistrate suggested that this date represents the final point at which reconciliation would no longer occur. Even though appellant emphasizes the fact there was no indication that reconciliation would occur after May 20, 2016, the date appellee left, this point does not render the magistrate's analysis unreasonable or inequitable. Assuming arguendo that would have been unlikely after May 20, the magistrate's analysis essentially identifies the point when, in light of the evidence, reconciliation would never occur. We hold the magistrate did not err in setting the termination date on September 1, 2016, the date of the filing and the trial court did not abuse its discretion in adopting this conclusion.

**{¶39}** Appellant's third assignment of error lacks merit.

**{¶40}** Appellant's fourth assignment of error provides:

**{¶41}** "The trial court erred and abused its discretion by failing to obtain a full and complete disclosure of all marital property, separate property, other assets, debts, income, and expenses of the spouse."

12

**{¶42}** Appellant apparently contends the magistrate committed error in failing to require the parties to provide additional testimony or evidence regarding the parties' marital assets. According to appellant, this is problematic because the magistrate improperly relied solely upon the statement of assets set forth in the prenuptial agreement which was prepared more than three years prior to the parties' separation.

**{¶43}** Preliminarily, at the hearing, appellant did not specifically seek to elicit additional information from appellee regarding marital assets at trial; moreover, he did not submit any additional information relating to marital assets that had or may have been accumulated during the marriage. And the magistrate specifically noted "there was no testimony regarding assets of the parties. It is reasonable and equitable to conclude the assets referred to in the prenuptial agreement which are subject to a percentage award to plaintiff/wife are the assets outlined in exhibit A of the prenuptial agreement." The magistrate acknowledged the parties' apparent decision to omit any additional evidence relating to assets and debts and, in light of this, deemed the statement of assets in the agreement exhaustive. We discern nothing unreasonable or unfair in the magistrate's determination. This conclusion is strengthened by the affidavits of assets and/or debts filed by each party in September 2017. In their affidavits, neither party averred that additional assets or debts had been acquired beyond those set forth in the prenuptial agreement. And the agreement specifically stated that all joint debts incurred during the marriage would be split equally by the parties. Under the circumstance, we fail to see how the magistrate erred in failing to further explore, sua sponte, the issue of marital assets and debts.

**{¶44}** Appellant's final assignment of error lacks merit.

13

{¶45} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.


MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.