[Cite as *Barrett v. Wagenbrenner*, 2025-Ohio-2494.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Brian R. Barrett, | : | |
| Plaintiff-Appellee, | : | No. 24AP-555 |
| | | (C.P.C. No. 20CV-5815) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Mark A. Wagenbrenner et al., | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on July 15, 2025

**On brief:** *Zeiger*, *Tigges*, *Little LLP*, *Marion H. Little*, *Jr.*, and *Matthew S. Zeiger*, for appellee. **Argued:** *Marion H. Little*, *Jr.*

**On brief:** *Bailey Cavalieri LLC*, *John F. Marsh*, *Thomas E. Geyer*, *Christopher W. Tackett*, and *Elizabeth E. Cary*, for appellants. **Argued:** *John F. Marsh*.

APPEAL from the Franklin County Court of Common Pleas

DINGUS, J.

{¶ 1} Defendants-appellants, Mark A. Wagenbrenner, Kevin Zeppernick, and Eric C. Wagenbrenner (collectively, "Wagenbrenners") appeal an interlocutory order of the Franklin County Court of Common Pleas. The trial court held that the Wagenbrenners had waived their attorney-client privilege with Thomas Geyer ("Attorney Geyer") related to litigation with plaintiff-appellee, Brian R. Barrett. For the reasons that follow, we reverse the judgment of the trial court and remand the cause for further proceedings.

## I. Facts and Procedural History

{¶ 2} The litigation underlying the current dispute originated in 2020 when Barrett sued the Wagenbrenners related to their actions as officers and directors of Wagenbrenner

Development, Inc. ("WDI"). Barrett alleged that the Wagenbrenners schemed to force Barrett out of WDI, and in doing so they breached their fiduciary duties to WDI itself.

{¶ 3} After an extended discovery period, the trial court denied the parties' motions for partial summary judgment and scheduled a jury trial for August 7, 2023. After a few weeks of trial preparations and a few thousand pages of filings, the parties authorized their respective attorneys to make efforts to negotiate a settlement agreement. Starting around August 3, 2023, the attorneys for Barrett and the Wagenbrenners engaged in discussions and written correspondence regarding possible settlement terms. WDI's counsel did not participate in the negotiations.

{¶ 4} On the day of trial, the parties and attorneys appeared and reported to the magistrate that the case had settled. Barrett's attorney, Marion H. Little, Jr., ("Attorney Little"), recited the terms of the settlement agreement on the record. The settlement terms included, among many other things, Barrett transferring his interest in WDI to the Wagenbrenners, a cash payment to Barrett, and a shifting of ownership interests in a variety of corporate entities that the parties had formed for specific real estate development projects. The Wagenbrenners agreed not to engage in certain activities that would indirectly dilute Barrett's remaining ownership interests or otherwise siphon profits from the corporate entities. The magistrate had each party confirm that they understood and agreed to the terms recited by Attorney Little.

{¶ 5} Based on the representation of the parties that the matter had settled, the magistrate issued an order indefinitely continuing the trial, reserving the right to reschedule the trial if they were to reach an impasse on the final language of the settlement agreement and related documents. (Aug. 7, 2023 Mag.'s Report.) The magistrate ordered the parties to provide a status update by August 31, 2023, and inform the court whether they planned to submit a dismissal entry or proceed to trial.

{¶ 6} Over the next several weeks, the parties encountered disagreements over details to include in the final settlement agreement, including whether WDI or the Wagenbrenners themselves were to make the cash payment to Barrett, and whether the compensation for Barrett's interest in WDI was limited to a cash payment or also included Mark and Eric Wagenbrenners' 50 membership units in one of the other corporate entities. The parties appear to have been primarily concerned about the tax implications of these

transactions. Each side believed that the other was attempting to diverge from the stated terms of the settlement, and so each side filed a motion to enforce the settlement agreement. The trial court scheduled a hearing on the matter for August 9, 2024.

{¶ 7} Barrett served subpoenas on Mark and Eric Wagenbrenner, as well as Pathways Financial Credit Union, to compel their testimony at the hearing. Mark and Eric Wagenbrenner filed a motion to quash, and Kevin Zeppernick joined the filing to preemptively move to quash the anticipated subpoena from Barrett. The Wagenbrenners maintained that the lawyers rather than the parties were the appropriate witnesses for the dispute, and they informed Barrett that they reserved the right to call Attorney Geyer and Attorney Little as witnesses. The motion to quash remains pending with the trial court and is not at issue in this appeal.

{¶ 8} At the beginning of the hearing, the Wagenbrenners argued that the settlement terms were clearly expressed in correspondence exchanged between the attorneys before the trial date, and that Barrett was attempting to use the core settlement terms read into the record on the trial date in 2023 to create an ambiguity in the settlement agreement itself. Conversely, Barrett argued that terms recited into the record were controlling, and that the Wagenbrenners were creating a dispute by looking to correspondence that predated the record settlement.

{¶ 9} Upon proceeding to the evidence portion of the hearing, Barrett's counsel, Attorney Little, called Attorney Geyer as the first witness. Attorney Geyer verified that the Wagenbrenners authorized him to testify and that his appearance was voluntary. He testified that the Wagenbrenners had authorized him to negotiate the settlement terms on their behalf in 2023. Attorney Little then read through the terms of the settlement agreement that he had recited into the record at the 2023 hearing. Attorney Geyer confirmed that he did not correct or clarify any of those terms when he stood with Attorney Little before the magistrate at the 2023 hearing.

{¶ 10} Attorney Geyer testified that his understanding of the settlement terms was that WDI, not the Wagenbrenners, would be purchasing Barrett's WDI shares. Attorney Geyer justified his interpretation by pointing out, "you will see the word 'repurchased' describing the way that the [WDI] interest were going to come back, and repurchase can only be done by the entity that issued the [WDI] shares in the first instance. So in my mind,

the repurchase can only be completed by [WDI]." (Aug. 9, 2024 Tr. at 33.) Attorney Geyer also testified that he believed that the compensation for Barrett's interest in WDI was limited to a cash payment and did not include Mark and Eric Wagenbrenners' membership units in one of their other corporate entities. He justified this latter point by referring to the email correspondence between the attorneys in the days leading up to the 2023 hearing. Attorney Geyer believed his correspondence showed that he had rejected opposing counsel's attempt at combined compensation by separating the cash and corporate-interest components.[1]

{¶ 11} Attorney Little inquired about Attorney Geyer's verbal and written communications with opposing counsel during their August 2023 negotiations. He then asked if Attorney Geyer had communicated any of the settlement information to his clients during the negotiations. The Wagenbrenners objected to the question based on attorney-client privilege. They noted that they permitted Attorney Geyer to take the stand for the limited purpose of testifying about his communications with opposing counsel and participation in the 2023 hearing, but not about privileged attorney-client communications.

{¶ 12} Attorney Little contended that Attorney Geyer's voluntary appearance to testify with the Wagenbrenners' consent constituted a waiver of the attorney-client privilege. He also argued that the Wagenbrenners waived their attorney-client privilege by failing to object when Attorney Geyer testified about his interpretation of the settlement terms, which Attorney Little characterized as information "that could have been the subject of his communications with his . . . clients." (Tr. at 55.)

{¶ 13} The trial court concluded that the Wagenbrenners waived their attorney-client privilege and allowed Attorney Little to continue his questions on Barret's behalf. Before he could continue with his examination of Attorney Geyer, the Wagenbrenners declared that they would appeal the trial court's ruling, and the hearing terminated. The Wagenbrenners' timely appeal is now before this court.

---

[1] The record before this court contains three settlement-negotiation letters that predated the August 7, 2023 hearing, all of which were authored by Attorney Little on behalf of Barrett. It appears that the Wagenbrenners might have temporarily displayed one or more of Attorney Geyer's letters during their opening statements to the trial court on August 9, 2024. However, Attorney Geyer's letters were not made part of the record. We are therefore unable to verify the accuracy of Attorney Geyer's testimony regarding his correspondence to Attorney Little.

## II. Assignments of Error

{¶ 14} The Wagenbrenners assign the following two assignments of error for our review:

> [I.] The trial court erred by finding that Appellants impliedly waived their attorney-client privilege when they authorized their Attorney Thomas Geyer to testify to only non-privileged communications and matters.
>
> [II.] The trial court erred when it conflated Appellants' authorization of Attorney Geyer to testify with the express consent for waiver of privileged communications required under R.C. 2317.02(A)(1).

## III. Discussion

{¶ 15} Although the Wagenbrenners' assignments of error center on the trial court's purported findings about their express or implied waiver of the attorney-client privilege, the trial court's judgment entry did not provide any specific findings to support its conclusion that the Wagenbrenners waived their attorney-client privilege. Regardless, both of the Wagenbrenners' assignments of error assert that they did not waive their attorney-client privilege in any way through Attorney Geyer's testimony. The parties' specific arguments can be categorized into three issues, which we will address in turn: (1) whether the Wagenbrenners waived their attorney-client privilege when they consented to Attorney Geyer's appearance as a testifying witness at the hearing, (2) whether Attorney Geyer's testimony disclosed any privileged communications, and if so, whether the Wagenbrenners forfeited or waived their attorney-client privilege regarding that testimony, and (3) whether the Wagenbrenners impermissibly used Attorney Geyer as a witness to prove their own interpretation of the settlement agreement, and if so, whether such actions constitute a waiver of the attorney-client privilege.

{¶ 16} The attorney-client privilege is "[a] fundamental principle in the attorney-client relationship." *Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St.3d 1, 4 (1998). One of the chief purposes of the attorney-client privilege is to ensure that clients provide their attorneys with comprehensive information without fear of disclosure, which enables the attorneys to provide competent, well-informed assistance. *See id.*; *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). A trial court's determination whether information is

privileged is a question of law that we review de novo. *Med. Mut. of Ohio v. Schlotterer*, 2009-Ohio-2496, ¶ 13.

{¶ 17} The attorney-client privilege is governed primarily by R.C. 2317.02(A), and otherwise by the common law. *See State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 2005-Ohio-1508, ¶ 18; Evid.R. 501 ("The privilege of a witness . . . shall be governed by statute . . . or by principles of common law as interpreted by the courts of this state in the light of reason and experience."). R.C. 2317.02 provides a testimonial privilege; it prohibits certain people from testifying about certain topics. The pertinent portion of the statute provides:

> The following persons shall not testify in certain respects:
>
> (A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client, except that the attorney may testify by express consent of the client . . . However, if the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context . . ., the attorney may be compelled to testify on the same subject.

R.C. 2317.02(A)(1). There are only two mechanisms in the above language that allow an attorney to testify about privileged communications: (1) the client expressly consents to such testimony, or (2) the client destroys the privileged nature of the communications by disclosing them. In the context of an attorney's testimony, this statutory provision "provides the exclusive means by which privileged communications directly between an attorney and a client can be waived." *Jackson v. Greger*, 2006-Ohio-4968, paragraph one of the syllabus.

{¶ 18} The Wagenbrenners assert that their consent to Attorney Geyer's mere appearance as a witness cannot be considered an express waiver of the testimonial attorney-client privilege. Barrett argues that the Wagenbrenners' express consent to Attorney Geyer's testimony is exactly the kind of express consent contemplated by R.C. 2317.02(A)(1). We agree with the Wagenbrenners' position.

{¶ 19} The statute is clear about what it prohibits: an attorney "shall not testify . . . concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client." R.C. 2317.02(A)(1). The second clause of R.C. 2317.02(A)(1) stating that an "attorney may testify by express consent of the client," is specific to the prohibition, meaning that the "express consent" must be to an attorney

testifying about a particular attorney-client communication or communications. The statute does not prohibit attorneys from ever taking the stand, nor does it prohibit attorneys from testifying about non-privileged matters. As such, consenting to an attorney's general appearance as a witness does not waive anything that is prohibited by R.C. 2307.02(A)(1).

{¶ 20} The plain meaning of R.C. 2317.02(A)(1) does not support the notion that allowing one's attorney to sit in the witness box constitutes an express, wholesale waiver of the attorney-client privilege. If statutory language is plain and unambiguous, " 'we must simply apply it.' " *Wilson v. Lawrence*, 2017-Ohio-1410, ¶ 11, quoting *State v. Hairston*, 2004-Ohio-969, ¶ 13. Applying the language here, the Wagenbrenners' consent for Attorney Geyer to testify at the August 9, 2024 hearing did not constitute express consent for Attorney Geyer to testify "concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client." R.C. 2317.02(A)(1).

{¶ 21} Statutory language notwithstanding, Barrett argues that the caselaw is on his side, and he cites various decisions purportedly holding that a client's consent to an attorney's testimony constitutes an express waiver of the attorney-client privilege: *Whitlock v. Labadie*, 1974 Ohio App. LEXIS 3501 (10th Dist. May 7, 1974); *Cooper v. Woodward*, 1983 Ohio App. LEXIS 13477 (5th Dist. July 28, 1983); *Sanderson Farms, Inc. v. Gasbarro*, 2004-Ohio-1460 (10th Dist.); *United States v. Nobles*, 422 U.S. 225 (1975); *Knepper v. Knepper*, 103 Ohio St. 529 (1921); *Baird v. Detrick*, 8 Ohio App. 198 (2d Dist. 1917); *Haley v. Dempsey*, 14 Ohio App. 326 (1st Dist. 1921). All of Barrett's cited cases are inapposite because each case turns on circumstances other than the mere fact of an attorney taking the stand with the client's consent.

{¶ 22} Some of Barrett's cases are inapplicable because they involve the additional circumstance of an attorney testifying about specific attorney-client communications. *See Whitlock* at *8-9 (client permitted his attorney to provide testimony about the legal advice the attorney gave to the client); *Cooper* at *5 (attorney was allowed to provide testimony specifically about his client's will, despite an opponent's objection, because the client expressly allowed her attorney to provide such testimony); *Sanderson Farms* at ¶ 19-20 (attorney testified about information that the attorney could only have known through confidential attorney-client communications). And the remainder of Barrett's cited cases are inapplicable because they simply do not involve the attorney-client privilege, or they

involve the attorney acting in the role of a subscribing witness to a will rather than the role of an attorney. *See Nobles* at 233-234, 236-240 (regarding the privilege against self-incrimination and the attorney work-product doctrine, but not the attorney-client privilege); *Knepper* at paragraph two of the syllabus (explaining that the purpose of a subscribing witness to a will is to preserve and provide evidence that the document was validly executed, and thus when an attorney acts as a subscribing witness, the attorney-client privilege cannot attach to evidence regarding the valid execution of that will); *Baird* at 200 (same); *Haley* at 328, citing *Baird*.

{¶ 23} Although the precise waiver argument here is not reflected in many decisions in Ohio, the context of various decisions makes it clear that the waiver or breach of the attorney-client privilege is related to specific communications rather than an attorney's act of testifying. For example, in *Knepper*, the Supreme Court of Ohio explained that although an attorney may validly testify about the execution of a will as a subscribing witness, the attorney cannot then testify about attorney-client communications outside that scope. *Knepper* at 536. In *Dejak v. Dejak*, 2019-Ohio-3236 (11th Dist.), the Eleventh District held that an attorney's testimony before the trial court regarding a prenuptial agreement did not implicate the attorney-client privilege because the attorney did not "disclose any particular conversations he had with [his client]." *Id*. at ¶ 32. In *Perrella v. Spitz*, 2013-Ohio-2702 (8th Dist.), the Eighth District held that although an attorney could be compelled to testify about non-privileged statements related to his client's settlement agreement, the attorney could not testify about confidential communications with his client. *Id*. at ¶ 9-10. Thus, when an attorney takes the stand and testifies about non-privileged information related to the representation of a client, there is no waiver or breach of the attorney-client privilege.

{¶ 24} Barrett argues that cases such as *Dejak* and *Perrella* are inapplicable here because, unlike those cases, Attorney Geyer specifically testified about communications protected by the attorney-client privilege. Barrett's argument on this point brings us to the second issue in this appeal: whether Attorney Geyer disclosed any privileged communications during his testimony, and whether the Wagenbrenners waived their privilege regarding those communications or forfeited the privilege by failing to object to Attorney Geyer's disclosures.

{¶ 25} Barrett identifies two areas of Attorney Geyer's testimony where he argues that Attorney Geyer disclosed attorney-client communications: his discussion of the word "repurchase," and his discussion of his correspondence with opposing counsel. Barrett asserts that Attorney Geyer's statements revealed "legal analysis and information that necessarily must have been communicated to the clients." (Appellee's brief at 11-12.) He further asserts that the statements revealed information that Attorney Geyer only would have learned through the attorney-client relationship with the Wagenbrenners.

{¶ 26} The Wagenbrenners' motion to enforce the settlement agreement includes an argument that a corporation is the only entity that can "repurchase stocks" under Ohio law. (Mar. 26, 2024 Mot. to Enforce Settlement Agreement at 6-7.) Attorney Geyer's testimony appears to merely repeat the legal argument presented in the briefs. An attorney's understanding of settlement terms or legal terms of art could potentially be protected attorney work product, but it is generally not a privileged attorney-client communication. *See Perella*, 2013-Ohio-2702, at ¶ 12-14 (8th Dist.) (differentiating between an attorney's mental impressions about a settlement agreement and attorney-client communications about the settlement agreement); *Kirtos v. Nationwide Ins. Co.*, 2008-Ohio-870, ¶ 23-25 (7th Dist.) (same); *Burnham v. Cleveland Clinic*, 2016-Ohio-8000, ¶ 18 (work product is "separate from privileged matters").

{¶ 27} Attorney Geyer did not indicate that the term "repurchase" had a special meaning based on the intent of the parties, nor did he state that his understanding of the definition of the term involved information that only could have come from the Wagenbrenners through confidential attorney-client communications. The mere fact that Attorney Geyer might have explained his understanding of the term "repurchase" with his clients at some point does not cause that information to be privileged. It is the communication between the attorney and client that is privileged, not the information itself. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Accordingly, Attorney Geyer did not disclose privileged communications in his discussion of the term "repurchase."

{¶ 28} Attorney Geyer's letters and emails to opposing counsel were necessarily communications to parties outside the attorney-client relationship and are therefore not privileged. *See Kirtos* at ¶ 22; *In re Martin*, 141 Ohio St. 87, 104-105 (1943); *State v. Post*, 32 Ohio St.3d 380 (1987), *limited on other grounds by, State v. McDermott*, 72 Ohio St.3d

570 (1995). Based upon our review of the record before us, Attorney Geyer did not disclose privileged communications in the correspondence exchanged with Barrett's counsel or when he discussed the contents of that correspondence at the August 9, 2024 hearing.

{¶ 29} Because Attorney Geyer did not disclose privileged attorney-client communications during his testimony, we need not address whether the Wagenbrenners waived or forfeited their attorney-client privilege regarding Attorney Geyer's disclosures. We stress, however, that absent a client's express consent or a client's own revelation of privileged communications, an attorney does not have the power or discretion to provide testimony that discloses privileged attorney-client communications. *Shaffer v. OhioHealth Corp.*, 2004-Ohio-63, ¶ 10 (10th Dist.); *King v. Barrett*, 11 Ohio St. 261 (1860), syllabus.

{¶ 30} Finally, we address the third issue reflected in the parties' arguments before this court and the trial court. Barrett asserts that the Wagenbrenners are using Attorney Geyer's testimony to prove their own state of mind, and that their improper use of their attorney's testimony waives the attorney-client privilege. The Wagenbrenners assert that their actions do not waive the testimonial attorney-client privilege unless those actions are identified in R.C. 2317.02(A).

{¶ 31} Although Barrett does not use the phrase "implied waiver," the cited caselaw in support of his argument is from jurisdictions that apply the common-law rule of implied waiver. *See, e.g., MBIA Ins. Corp. v. Patriarch Partners VIII, L.L.C.*, 2012 U.S. Dist. LEXIS 92435, *15 (S.D.N.Y. July 3, 2012) (describing the history of New York jurisprudence allowing the implied waiver of the attorney-client privilege); *Stovall v. United States*, 85 Fed. Cl. 810, 815-816 (2009); *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 447 (S.D.Fla. 1980), discussing *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash. 1975); *Medtronic, Inc. v. Intermedics, Inc.*, 162 F.R.D. 133, 134-135 (D.Minn. 1995), citing *Hearn*; *IMC Chems., Inc. v. Niro, Inc.*, 2000 U.S. Dist. LEXIS 22850, *62-66 (D.Kan. July 19, 2000), applying *Hearn*. Under the common law rule, a client impliedly waives the attorney-client privilege when:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Hearn* at 581.

{¶ 32} However, as the Wagenbrenners point out, the Supreme Court of Ohio has expressly declined to apply the doctrine of implied waiver to the testimonial attorney-client privilege in Ohio. *See State v. Brunson*, 2022-Ohio-4299, ¶ 35; *Jackson*, 2006-Ohio-4968, at ¶ 11-13; *McDermott*, 72 Ohio St.3d at 574. We cannot apply the common-law rule of implied waiver to a testimonial privilege because "[t]he [Ohio] General Assembly has chosen to limit the means by which a client's conduct may effect waiver of the attorney-client privilege" in R.C. 2317.02(A). *Jackson* at ¶ 13. We cannot add waivers to the statute by judicial fiat. *See id.*; *McDermott* at 572-573.

{¶ 33} Barrett argues that it is fundamentally unfair to allow the Wagenbrenners to use Attorney Geyer's testimony while barring Barrett from compelling Attorney Geyer to testify about privileged attorney-client communications. He stresses that the Wagenbrenners are using Attorney Geyer's testimony as impermissible parol evidence and that his testimony is irrelevant absent the assumption that it is being used as proof of the Wagenbrenners' intent. Given that the Wagenbrenners have not yet questioned Attorney Geyer at the hearing, it is difficult to assume that they have used Attorney Geyer's testimony for anything at all. Moreover, whether Attorney Geyer's testimony is irrelevant or impermissible parol evidence is not before this court. Even if we assume that Attorney Geyer's testimony was improper for those reasons, forcing Attorney Geyer to divulge confidential attorney-client communications is not one of the available remedies for that problem absent the circumstances provided in R.C. 2317.02(A)(1).

{¶ 34} Given the foregoing, we conclude that the Wagenbrenners did not waive their attorney-client privilege during the August 9, 2024 hearing, and we sustain the Wagenbrenners' assignments of error.

## IV. Disposition

{¶ 35} Having sustained the Wagenbrenners' two assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, and we remand the matter for further proceedings in accordance with the law and consistent with this decision.

*Judgment reversed;*
*cause remanded.*

JAMISON, P.J., and EDELSTEIN, J., concur.

———————————